UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NANCY E. WEINGARTNER )
3629 Arbor Run Dr. )
Valdosta, Georgia 31605, )
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　*Plaintiff*, )
　　　　　　　　　　　　　　　　　　　　)
　　v. ) Civil No. _____
　　　　　　　　　　　　　　　　　　　　)
MICHAEL L. DOMINGUEZ )
Acting Secretary of the Air Force )
Department of the Air Force )
The Pentagon )
Washington, DC 20330-1000, )
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　*Defendant*. )

COMPLAINT
(APA Review of Decision of the Air Force
Board for Correction of Military Records)

1. This is an action for Administrative Procedure Act review of a decision of the Air Force Board for Correction of Military Records ("AFBCMR"). It calls upon the Court, consistent with settled principles of administrative law and judicial review, to require that the AFBCMR (a) rule on, rather than ignore, plaintiff's detailed factual submissions, and (b) if, having done so, the AFBCMR finds in her favor but does not recommend her for a directed promotion, refer her record to Special Selection Boards ("SSBs").

2. The Court has federal question jurisdiction under 28 U.S.C. § 1331 and 10 U.S.C. §§ 628 and 1552.

3. Plaintiff is a citizen of the United States and an active duty Major in the United States Air Force Biomedical Services Corps. She lives at the address stated in

the caption.

4. Defendant is acting Secretary of the Air Force.

## Governing Statutes

5. Under 10 U.S.C. § 1552, defendant is responsible for the correction of military records, acting through a board of civilians known as the AFBCMR.

6. Under 10 U.S.C. § 628, defendant may refer the record of an officer to an SSB if the officer has failed of promotion as a result of material unfairness. 10 U.S.C. § 628(b)(1). If the Secretary refuses to do so, his decision is subject to judicial review. 10 U.S.C. § 628(g)(1)(A).

## Facts

7. Major Weingartner, a licensed clinical social worker, was treated unfairly when she was stationed at Ramstein Air Base ("AB"), Germany, in 1998-99.

8. In April 1999, she was prematurely removed from her position as Family Advocacy Element Leader.

9. On May 5, 1999, she submitted a formal complaint to the Third Air Force Inspector General ("IG"), asserting, among other things, that her removal was in reprisal for her having undertaken a unit self-assessment, which functioned as a protected disclosure.

10. She also complained of gender-based discrimination and a failure to receive required performance feedback in a timely manner.

11. She supplemented her IG complaint on September 23, 2000, asserting, among other things, that her Promotion Recommendation Form ("PRF") was unfair and a further form of reprisal.

12. Parts of Major Weingartner's IG complaint were found to be substantiated, and parts were not.

13. She has never been furnished an unredacted copy of the complete Report of Investigation ("ROI").

14. The ROI opined that Major Weingartner would have been removed from her position in any event, reporting that five reasons had been cited for her removal.

15. On June 11, 2003, having been reassigned back to the United States, Major Weingartner applied to the AFBCMR for relief, seeking an evidentiary hearing and either a directed promotion to Lieutenant Colonel or, failing that, referral of her record to SSBs for each year in which she failed of selection.

16. She also asked that each such SSB be furnished a memorandum indicating that because of previously career injury, she should be deemed to have received a "Definitely Promote" PRF.

17. Major Weingartner's submission to the AFBCMR refuted each of the ROI's five proffered justifications for her removal as Family Advocacy Element Leader.

18. On October 24, 2003, the AFBCMR transmitted the uniformed Air Force's initial responses (known as "advisory opinions") to Major Weingartner's application.

19. On December 2, 2003, she filed a detailed rebuttal, stating:

> The essence of the DPPPE advisory opinion is that since the Inspector General did not find Maj Weingartner's complaint of reprisal to have been substantiated, her record correction application should be denied. This reflects a fundamental misunderstanding of the role of the AFBCMR. Under 10 USC 1552, every member has a right to review of his or her application by a "board of civilians" acting for the Secretary. That board, of course, is the AFBCMR. It must render its own decisions and not simply rubberstamp those of uniformed personnel, including the 3AF IG.

Maj Weingartner's application is quite detailed, is submitted under oath, and is supported by substantial evidence. The two advisory opinions, in contrast, are totally superficial. Neither one makes the slightest effort to assess the evidence adduced by Maj Weingartner, or to address the specific arguments advanced in her supporting memorandum. Vague generalities are no more worthy of acceptance when they come in advisory opinions than when they are submitted by an applicant. The advisory opinions are of no assistance to the AFBCMR because they fail to address the specifics of the case. In a perfect universe it would be tempting to urge the AFBCMR to require the submission of advisory opinions that do so. However, in light of the passage of time and the fact that there can be no assurance that such advisory opinions would be any more helpful to the board than the ones previously submitted, we believe the AFBCMR should proceed on its own to examine the evidence and draw the required conclusions. The Air Force is not entitled to a second bite at the apple while Maj Weingartner continues to suffer the career harm identified in her submission.

We also note that, in addition to failing to come to grips with the particulars of the case presented in the application and supporting materials, the offices that submitted the advisory opinions have failed to submit any witness statements that might overcome Maj Weingartner's evidence.

As one witness whose name has been redacted from the IG's report concluded, "[r]egarding leadership performance at the 8[6]th Medical Group vis-à-vis Major Weingartner, REDACTED summed it up with four words: 'They get an F.'" See our brief at 15. The advisory opinion from DPPPE, however, fails to address those prejudicial circumstances, even though they are set forth in detail in the application. Instead, it seeks to treat the case as if it were simply a series of discrete technical matters. This kind of trees vs. forest approach is a far cry from how the AFBCMR has performed its important function over many years. Specific promotion recommendations may no longer be permitted in OPRs [Officer Performance Reports], but that does not mean stratification comments—or the lack thereof—are immaterial. As we explained in detail, Maj Weingartner was subjected to extremely unfair treatment by her command at Ramstein AB. That kind of treatment inevitably colors what appears in an OPR (or, as here, does not appear). Anyone familiar with the performance evaluation system knows perfectly well that the choice of terms in an OPR can have a decisive impact on promotion prospects.

DPPPE notes that since Maj Weingartner remained eligible for ISS in residence, there was no problem in noting this on her OPR. Once again, this observation overlooks the practical realities of the effect of such a comment in an OPR for an officer in her pay grade. Sometimes an OPR can be unfair even if it is literally accurate.

As for having a new PRF generated, the DPPPE advisory opinion comments that it is not clear who Maj Weingartner believes should prepare the revised form, and suggests that in any event this issue is moot because the IG found that there had been no reprisal. Neither of these observations is valid. Finding an appropriate general officer to prepare the PRF will be no problem, quite obviously. Nor is the matter "moot" simply because the IG found no reprisal. In fact, as our brief demonstrates, the investigation revealed clear unfairness directed to Maj Weingartner, and the reasons given for accepting the command's contention that she would have been transferred in any event simply do not withstand scrutiny. We will not repeat here what is in the brief. The AFBCMR should simply refer to pp. 4-15.

Nothing in the DPPPE [Directorate of Personnel Program Management, Evaluation Programs Branch] advisory opinion addresses in any manner Maj Weingartner's evidence that gender played an improper role in her treatment. Please refer to our brief at pp. 12-13 and supporting documentation. Nor does the advisory opinion in any way address the unfairness and inaccuracy of the PRF, as noted in our brief at p. 15 and n.7. A PRF for a Major (who is about to meet a LtCol board) that entirely fails to describe the officer's performance as a Major is a sham. The Air Force did not establish the PRF machinery with a view to its being so easily circumvented.

The other advisory opinion is from DPPPO [Directorate of Personnel Program Management, Officer Promotions, Appointments and Selective Continuation Branch]. Like the first one, this one also fails to address the specifics of Maj Weingartner's underlying factual assertions, but simply takes the IG's conclusions as a given. As explained above, that is no help at all to the AFBCMR. The DPPPO advisory opinion also errs in its characterization of her complaint. It is not simply a question of whether she was a victim of reprisal, but also whether—reprisal aside—she was treated unfairly, as the record plainly demonstrates.

DPPPO insists that SSB consideration is unwarranted based solely on DPPPE's advisory opinion, including the suggestion that Maj Weingartner's PRF is moot because the IG investigation found no reprisal. As we have explained, it is for the AFBCMR, and not the 3AF IG, to decide whether her objections to the PRF—which transcend

reprisal—are valid.

DPPPO also maintains that no relief is warranted in respect of the OSB recitation of Maj Weingartner's duty history. The date on the duty history indicates that on November 2, 1998, she was Sembach Community Services Coordinator. But the OPR for the reporting period from July 3, 1998 to July 12, 1999 suggests that she was the Family Advocacy Element Leader. The title of Sembach Community Services Coordinator never even existed. The three OSBs attached to the advisory opinion drop the Sembach title and add the correct one that was not given until January 2000. The fact remains that at the time of the selection board, the acting title on the OSB assignment history was Sembach community Services Coordinator, not Family Advocacy Element Leader, as the OPR has it. The resulting discrepancy could only have puzzled the 1999 Lt Col board, prejudicing Maj Weingartner's chances for promotion.

If the AFBCMR takes the time to go through the actual evidence for itself, rather than treat the 3AF IG's conclusions as a fait accompli (as the advisory opinions clearly do), we believe it will see that Maj Weingartner has indeed suffered career injury. This is one of those unusual situations in which the applicant's record is so unfair for such a long period of time that the SSB system cannot reasonably be expected to correct the matter, and that as a result, direct promotion is called for. That is our strong request. If, as our brief explained, the AFBCMR is for any reason not disposed to recommend direct promotion, then it should at least mandate consideration by an SSB based on a fully corrected record. Any SSB that is conducted should be furnished a memorandum indicating that because of previous career injury, it should deem Maj Weingartner to have received a Definitely Promote on the PRF.

20. This response led the AFBCMR to seek further advisory opinions, which were forwarded to Major Weingartner on July 1, 2004.

21. On July 13, 2004, Major Weingartner responded as follows:

Neither of the two further advisory opinions alters the case or cures the problems set forth in our December 2, 2003 reply to the earlier advisory opinions.

The April 30, 2004 advisory opinion suffers from the same defects we previously identified. This 1½-page advisory makes no effort to address with particularity the substantial evidence of unfairness that we submitted. Instead, it engages in a lot of rhetoric, and asks the

6

AFBCMR simply to defer to findings of the Inspector General's investigation. This is wrong for three reasons. First, the advisory opinion is highly selective in its reference to what the IG found substantiated, what the IG found unsubstantiated, and what the IG never conclusively determined one way or the other. We have already demonstrated the inadequacy of that investigation, with particular reference to hard evidence, and there is no purpose to repeat that demonstration in this letter. Please refer to our prior submissions. Second, the IG investigation was necessarily based only on the evidence available at the time; the decision here, however, has to be based on all of the evidence that is now available; the two are not the same. Third, as we have also previously explained, Congress has imposed on the Secretary, acting through this "board[] of civilians," 10 U.S.C. § 1552, the duty to determine *independently* whether an error or injustice has occurred. The IG process, whatever its strengths and weaknesses is not a substitute for *de novo* determination of disputed issues in this civilian forum.

The May 21, 2004 advisory opinion from DPPPO is easily summarized: that office does not itself evaluate an applicant's submissions, but simply takes as a given the conclusions set forth in other offices' advisories. Such an advisory opinion adds nothing to the conversation. In this case, however, DPPPO has conceded that there was an error on Maj Weingartner's P0599B OSB. DPPPO maintains that this now-admitted error was not likely the key to her failure of selection, suggesting instead that her passover was "the result of an assessment of her entire selection record." That does not carry the service's burden under the case law, which requires the government to prove, once an error has been identified that has some nexus to the adverse action (duty titles being more than a trivial matter when evaluating an officer's record), that the same adverse action would have occurred in any event. *E.g., Frizelle v. Slater*, 111 F.3d 172 (D.C. Cir. 1997). We would only add that if the intent behind the language quoted was to suggest that Maj Weingartner's record suffered from some flaw that was so profound that it precluded her promotion, any such implication would be entirely false—and we invite the AFBCMR to examine her record for itself from this perspective. It is a fine record, and certainly a promotable one.

Finally, since Maj Weingartner has asked for a direct promotion, it is appropriate to make the Board and the Secretary's delegate aware of her latest achievements, so they may make a decision in light of her current, continuing high level of contribution to the mission of the United States Air Force. In 2002 she was Social Worker of the Year for the Air Combat Command, and in 2003 she was Social Worker of the Year for the Air Force Special Operations Command. Earlier this year

she was named Social Worker of the Year for the South Georgia Chapter of the National Association of Social Workers. Pertinent documents are enclosed. Her OPRs continue to strongly recommend her promotion to the grade of Lieutenant Colonel.

Our December 2, 2003 advisory opinion response observed:

> If the AFBCMR takes the time to go through the actual evidence for itself, rather than treat the 3AF IG's conclusions as a fait accompli (as the advisory opinions clearly do), we believe it will see that Maj Weingartner has indeed suffered career injury. This is one of those unusual situations in which the applicant's record is so unfair for such a long period of time that the SSB system cannot reasonably be expected to correct the matter, and that as a result, direct promotion is called for. That is our strong request. If, as our brief explained, the AFBCMR is for any reason not disposed to recommend direct promotion, then it should at least mandate consideration by an SSB based on a fully corrected record. Any SSB that is conducted should be furnished a memorandum indicating that because of previous career injury, it should deem Maj Weingartner to have received a Definitely Promote on the PRF.

Nothing in the latest advisory opinions suggests a different course of action, especially given the AFBCMR's "abiding moral sanction to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief." *Duhon v. United States*, 461 F.2d 1278, 1281 (Ct. Cl. 1972), *quoting Caddington v. United States*, 147 Ct. Cl. 629, 178 F. Supp. 604, 607 (1959); *see also Thomas v. Cheney*, 925 F.2d 1407, 1423-24 (Fed. Cir. 1991).

22. All four advisory opinions took as a given the conclusions of the ROI instead of addressing the merits of Major Weingartner's particularized analysis and refutation of the five reasons cited in the ROI for the proposition that she would have been removed as Family Advocacy Element Leader in any event.

23. On October 22, 2004, without conducting an evidentiary hearing, the AFBCMR denied Major Weingartner's application.

24. The AFBCMR's 17-page decision purports to summarize the parties' contentions, but the single paragraph in which it states its conclusions on the merits of the case never addresses Major Weingartner's particularized analysis and refutation of the five reasons cited in the ROI for the proposition that she would have been removed as Family Advocacy Element Leader in any event, contenting itself instead with the conclusory observation that she "did not present any credible evidence from her senior rating chain or other agencies to support her contention of error or injustice."

25. The AFBCMR's decision is final agency action.

## Cause of Action

26. The averments of ¶¶ 1-25 are incorporated herein by reference.

27. The AFBCMR had a duty to analyze the evidence itself, rather than simply dismiss Major Weingartner's claim because neither the IG nor her chain of command—none of whom are the "board[] of civilians" through which the Secretary is required to exercise his record-correction authority—did not support her.

28. The AFBCMR's denial of plaintiff's application was arbitrary, capricious, not based on substantial evidence based on the whole record, and contrary to law.

## Prayer

WHEREFORE Major Weingartner prays that the Court—

a. set aside the decision of the AFBCMR;

b. remand the case with instructions (1) to critically review and explain its ruling with respect to her particularized analysis and refutation of the five reasons cited in the ROI for the proposition that she would have been

removed as Family Advocacy Element Leader in any event, and, if the AFBCMR finds her entitled to relief but decides not to recommend a direct promotion, (2) to cause her record to be considered by the appropriate number of SSBs, as provided in 10 U.S.C. § 628(g)(1)(B), with a memorandum indicating that because of previously career injury, she should be deemed to have received a "Definitely Promote" PRF;

c. award her costs and reasonable attorneys fees incurred in this action; and

d. grant such other and further relief as may in the circumstances be just and proper.

Respectfully submitted,

*Eugene R. Fidell*

Eugene R. Fidell (112003)
Matthew S. Freedus (475887)
Feldesman Tucker Leifer Fidell LLP
2001 L Street, N.W.
Second Floor
Washington, DC 20036
(202) 466-8960

*Attorneys for Plaintiff*

May 20, 2005

*Please serve:*

Hon. Kenneth L. Wainstein, United States Attorney for the District of Columbia
    (attn: Civil Process Clerk)
Hon. Alberto R. Gonzales, Attorney General of the United States
Hon. Michael L. Dominguez, Acting Secretary of the Air Force