UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NANCY E. WEINGARTNER,           )
                                )
        *Plaintiff*,            )
                                )
    v.                          )        Civil No. 05-1031 (HHK)
                                )
PETE GEREN                      )
Acting Secretary of the Air Force,  )
                                )
        *Defendant.*            )        Judge Kennedy

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT, AND
STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT

*Introduction*

This reprisal case seeks Administrative Procedure Act, 5 U.S.C. § 706 ("APA"), review of a decision of the Air Force Board for Correction of Military Records.("AFBCMR"). The records of this Court are laden with BCMR cases, which typically involve an effort to persuade it, essentially *de novo*, that a decision of the board was incorrect on the merits. Often, these cases seek outlandish relief. This case does not fit that mold. Plaintiff, a Licensed Clinical Social Worker in the Air Force, seeks only a remand. The reasons she does so are quite simple: the AFBCMR never explained its ruling on a central part of the case and misapplied the burden of proof prescribed by the Court of Appeals. Instead of performing the kind of independent civilian review of her allegations that Congress contemplated, it abdicated to the uniformed personnel of her chain of command and the Inspector General ("IG").

Unlike the government, we have no interest in asking the Court to weigh in on the merits; all we ask is a remand so the Court—and this officer—can have the assurance to which each is entitled that the AFBCMR (1) has properly explained its decision in a way that permits intelligent review, (2) has correctly assigned the burden of proof, and (3) has not functioned as a mere rubberstamp for uniformed decision makers. The decision on review does not afford that assurance.

### Glossary

| | |
|---|---|
| 3AF | Third Air Force |
| AB | Air Base |
| AFBCMR | Air Force Board for Correction of Military Records |
| AR | Administrative Record |
| BCMR | Board for Correction of Military Records |
| BCNR | Board for Correction of Naval Records |
| DPPPE | Directorate of Personnel Program Mgt., Evaluation Programs Branch |
| DPPPO | Directorate of Personnel Program Mgt., Officer Programs Branch |
| IG | Inspector General |
| MLR | Management Level Review |
| OPR | Officer Performance Report/Office of Primary Responsibility |
| OSB | Officer Selection Brief |
| PRF | Promotion Recommendation Form |
| ROI | Report of Investigation |
| SECAF | Secretary of the Air Force |
| SSB | Special Selection Board |

*Questions Presented*

1. DID THE AFBCMR IMPROPERLY FAIL TO EXPLAIN ITS CONCLUSION IN LIGHT OF MAJOR WEINGARTNER'S REFUTATION OF THE FIVE REASONS THE ROI CITED FOR THE PROPOSITION THAT SHE WOULD HAVE BEEN REMOVED AS FAMILY ADVOCACY ELEMENT LEADER IN ANY EVENT?

2. DID THE AFBCMR IMPROPERLY FAIL TO SHIFT TO THE AIR FORCE THE BURDEN OF PROOF AS TO WHETHER MAJOR WEINGARTNER WOULD HAVE BEEN REMOVED AS FAMILY ADVOCACY ELEMENT LEADER IN ANY EVENT?

3. DID THE AFBCMR VIOLATE CONGRESSIONAL INTENT BY DEFERRING TO UNIFORMED INVESTIGATORS AND INSISTING THAT MAJOR WEINGARTNER NEEDED TO HAVE THE SUPPORT OF HER CHAIN OF COMMAND IN ORDER TO PREVAIL?

*Governing Statutes and Regulations*

The principal governing statute is 10 U.S.C. § 1552. It authorizes the service secretaries, acting through "boards of civilians," to correct military records. Another statute, 10 U.S.C. § 628, authorizes the service secretary to refer officers' records to a Special Selection Board ("SSB") when they have not been fairly considered by a regular selection board. Copies of both statutes, as well as the AFBCMR's regulations, are attached for convenience.

*Statement of the Facts*

Plaintiff is an active duty Major in the United States Air Force Biomedical Services Corps. AR 24. She is a Licensed Clinical Social Worker, AR 25, 43, and was treated unfairly when she was stationed at Ramstein Air Base ("AB"), Germany, in 1998-99. AR 26-28. In April 1999, she was prematurely removed from her position as Family Advocacy Element Leader. AR 27.

3

On May 5, 1999, she submitted a formal complaint to the Third Air Force Inspector General ("IG"), asserting, among other things, that her removal was in reprisal for her having undertaken a unit self-assessment, which functioned as a protected disclosure. AR 27-28, 56, 227. She also complained of gender-based discrimination and a failure to receive required performance feedback in a timely manner. AR 27-28, 58-59.

She supplemented her IG complaint on September 25, 2000, asserting, among other things, that her Promotion Recommendation Form ("PRF") was unfair and a further form of reprisal. AR 35, 137. Parts of her IG complaint were found to be substantiated, and parts were not. AR 28, 217, 223. She has never been furnished an unredacted copy of the complete Report of Investigation ("ROI"). AR 28; *see* AR 217.The redacted version she has been furnished opined that she would have been removed from her position in any event, reporting that five reasons had been cited for her removal. AR 29, 236-236A (with cross-references indicated).[1]

### Proceedings before the AFBCMR

On June 11, 2003, having been reassigned back to the United States, plaintiff applied to the AFBCMR for relief, seeking an evidentiary hearing and either a direct promotion to Lieutenant Colonel or, failing that, referral of her record to SSBs for each year in which she failed of selection. AR 20, 24, 40-41, 263; *see also* AR 54. She also asked that each such SSB be furnished a memorandum indicating that because of previously career injury, she should be deemed to have received a "Definitely

---

[1] The AR does not include the ROI page that immediately follows the one marked as AR 236 or the advisory opinion page that immediately follows the one marked as AR 280. Copies of each are attached. We cite them as AR 236A and 280A.

Promote" PRF. AR 41.

Plaintiff's submission to the AFBCMR refuted each of the ROI's five proffered justifications for her removal as Family Advocacy Element Leader. AR 29-35.

On October 24, 2003, the AFBCMR transmitted the uniformed Air Force's initial responses (known as "advisory opinions") to her application. AR 264-72.

On December 2, 2003, she filed a detailed rebuttal, stating:[2]

> The essence of the DPPPE advisory opinion is that since the Inspector General did not find Maj Weingartner's complaint of reprisal to have been substantiated, her record correction application should be denied. [AR 265 (¶ d)] This reflects a fundamental misunderstanding of the role of the AFBCMR. Under 10 USC 1552, every member has a right to review of his or her application by a "board of civilians" acting for the Secretary. That board, of course, is the AFBCMR. It must render its own decisions and not simply rubberstamp those of uniformed personnel, including the 3AF IG.
>
> Maj Weingartner's application is quite detailed, is submitted under oath [AR 20 (§ 13), 42], and is supported by substantial evidence. [AR 43-262] The two advisory opinions [AR 264-67], in contrast, are totally superficial. Neither one makes the slightest effort to assess the evidence adduced by Maj Weingartner, or to address the specific arguments advanced in her supporting memorandum. Vague generalities are no more worthy of acceptance when they come in advisory opinions than when they are submitted by an applicant. The advisory opinions are of no assistance to the AFBCMR because they fail to address the specifics of the case. In a perfect universe it would be tempting to urge the AFBCMR to require the submission of advisory opinions that do so. However, in light of the passage of time and the fact that there can be no assurance that such advisory opinions would be any more helpful to the board than the ones previously submitted, we believe the AFBCMR should proceed on its own to examine the evidence and draw the required conclusions. The Air Force is not entitled to a second bite at the apple while Maj Weingartner continues to suffer the career harm identified in her submission.

---

[2] Internal record references here and the next indented quote are indicated in brackets.

We also note that, in addition to failing to come to grips with the particulars of the case presented in the application and supporting materials, the offices that submitted the advisory opinions have failed to submit any witness statements that might overcome Maj Weingartner's evidence.

As one witness whose name has been redacted from the IG's report concluded, "[r]egarding leadership performance at the 8[6]th Medical Group vis-à-vis Major Weingartner, REDACTED summed it up with four words: 'They get an F.'" [AR 237] See our brief at 15 [AR 38]. The advisory opinion from DPPPE, however, fails to address those prejudicial circumstances, even though they are set forth in detail in the application. Instead, it seeks to treat the case as if it were simply a series of discrete technical matters. This kind of trees vs. forest approach is a far cry from how the AFBCMR has performed its important function over many years. Specific promotion recommendations may no longer be permitted in OPRs [Officer Performance Reports], but that does not mean stratification comments—or the lack thereof—are immaterial. As we explained in detail, Maj Weingartner was subjected to extremely unfair treatment by her command at Ramstein AB. That kind of treatment inevitably colors what appears in an OPR (or, as here, does not appear). Anyone familiar with the performance evaluation system knows perfectly well that the choice of terms in an OPR can have a decisive impact on promotion prospects.

DPPPE notes that since Maj Weingartner remained eligible for ISS in residence, there was no problem in noting this on her OPR. [AR 264] Once again, this observation overlooks the practical realities of the effect of such a comment in an OPR for an officer in her pay grade. Sometimes an OPR can be unfair even if it is literally accurate.

As for having a new PRF generated, the DPPPE advisory opinion comments that it is not clear who Maj Weingartner believes should prepare the revised form, and suggests that in any event this issue is moot because the IG found that there had been no reprisal. [AR 265 (¶ d)] Neither of these observations is valid. Finding an appropriate general officer to prepare the PRF will be no problem, quite obviously. Nor is the matter "moot" simply because the IG found no reprisal. In fact, as our brief demonstrates, the investigation revealed clear unfairness directed to Maj Weingartner, and the reasons given for accepting the command's contention that she would have been transferred in any event simply do not withstand scrutiny. We will not repeat here what is in the brief. The AFBCMR should simply refer to pp. 4-15. [AR 27-38]

6

Nothing in the DPPPE [Directorate of Personnel Program Management, Evaluation Programs Branch] advisory opinion addresses in any manner Maj Weingartner's evidence that gender played an improper role in her treatment. Please refer to our brief at pp. 12-13 [AR 35-36] and supporting documentation. Nor does the advisory opinion in any way address the unfairness and inaccuracy of the PRF, as noted in our brief at p. 15 and n.7 [AR 37 n.7]. A PRF for a Major (who is about to meet a LtCol board) that entirely fails to describe the officer's performance as a Major is a sham. The Air Force did not establish the PRF machinery with a view to its being so easily circumvented.

The other advisory opinion is from DPPPO [Directorate of Personnel Program Management, Officer Promotions, Appointments and Selective Continuation Branch]. [AR 266] Like the first one, this one also fails to address the specifics of Maj Weingartner's underlying factual assertions, but simply takes the IG's conclusions as a given. [*Id.* (¶ b)] As explained above, that is no help at all to the AFBCMR. The DPPPO advisory opinion also errs in its characterization of her complaint. It is not simply a question of whether she was a victim of reprisal, but also whether—reprisal aside—she was treated unfairly, as the record plainly demonstrates.

DPPPO insists that SSB consideration is unwarranted based solely on DPPPE's advisory opinion, including the suggestion that Maj Weingartner's PRF is moot because the IG investigation found no reprisal. [AR 266 (¶ b)] As we have explained [AR 273], it is for the AFBCMR, and not the 3AF IG, to decide whether her objections to the PRF—which transcend reprisal—are valid.

DPPPO also maintains that no relief is warranted in respect of the OSB recitation of Maj Weingartner's duty history. [AR 267 (¶ c)] The date on the duty history indicates that on November 2, 1998, she was Sembach Community Services Coordinator. [AR 268] But the OPR for the reporting period from July 3, 1998 to July 12, 1999 suggests that she was the Family Advocacy Element Leader. [AR 120 (§ III 1)] The title of Sembach Community Services Coordinator never even existed. The three OSBs attached to the advisory opinion drop the Sembach title and add the correct one that was not given until January 2000. [AR 268-71] The fact remains that at the time of the selection board, the acting title on the OSB assignment history was Sembach community Services Coordinator, not Family Advocacy Element Leader, as the OPR has it. The resulting discrepancy could only have puzzled the 1999 Lt Col board, prejudicing Maj Weingartner's chances for promotion.

If the AFBCMR takes the time to go through the actual evidence for itself, rather than treat the 3AF IG's conclusions as a fait accompli (as the advisory opinions clearly do), we believe it will see that Maj Weingartner has indeed suffered career injury. This is one of those unusual situations in which the applicant's record is so unfair for such a long period of time that the SSB system cannot reasonably be expected to correct the matter, and that as a result, direct promotion is called for. That is our strong request. If, as our brief explained [AR 40-41], the AFBCMR is for any reason not disposed to recommend direct promotion, then it should at least mandate consideration by an SSB based on a fully corrected record. Any SSB that is conducted should be furnished a memorandum indicating that because of previous career injury, it should deem Maj Weingartner to have received a Definitely Promote on the PRF.

AR 273-77.

This response led the AFBCMR to seek further advisory opinions, which were forwarded to plaintiff on July 1, 2004. AR 278-81. On July 13, 2004, she responded as follows:

Neither of the two further advisory opinions [AR 278-80A] alters the case or cures the problems set forth in our December 2, 2003 reply to the earlier advisory opinions. [AR 273-77]

The April 30, 2004 advisory opinion [AR 278-79] suffers from the same defects we previously identified. This 1½-page advisory makes no effort to address with particularity the substantial evidence of unfairness that we submitted. Instead, it engages in a lot of rhetoric, and asks the AFBCMR simply to defer to findings of the Inspector General's investigation. [AR 278-79] This is wrong for three reasons. First, the advisory opinion is highly selective in its reference to what the IG found substantiated, what the IG found unsubstantiated, and what the IG never conclusively determined one way or the other. We have already demonstrated the inadequacy of that investigation, with particular reference to hard evidence [AR 27-38], and there is no purpose to repeat that demonstration in this letter. Please refer to our prior submissions. Second, the IG investigation [AR 218-37] was necessarily based only on the evidence available at the time; the decision here, however, has to be based on all of the evidence that is now available; the two are not the same. Third, as we have also previously explained [AR 273], Congress has imposed on the Secretary, acting through this "board[] of civilians," 10 U.S.C. § 1552, the duty to determine *independently* whether an error or injustice has occurred.

8

The IG process, whatever its strengths and weaknesses is not a substitute for *de novo* determination of disputed issues in this civilian forum.

The May 21, 2004 advisory opinion from DPPPO [AR 280-80A] is easily summarized: that office does not itself evaluate an applicant's submissions, but simply takes as a given the conclusions set forth in other offices' advisories. [AR 280] Such an advisory opinion adds nothing to the conversation. In this case, however, DPPPO has conceded that there was an error on Maj Weingartner's P0599B OSB. DPPPO maintains that this now-admitted error was not likely the key to her failure of selection, suggesting instead that her passover was "the result of an assessment of her entire selection record." [AR 280A] That does not carry the service's burden under the case law, which requires the government to prove, once an error has been identified that has some nexus to the adverse action (duty titles being more than a trivial matter when evaluating an officer's record), that the same adverse action would have occurred in any event. *E.g., Frizelle v. Slater*, 111 F.3d 172 (D.C. Cir. 1997). We would only add that if the intent behind the language quoted was to suggest that Maj Weingartner's record suffered from some flaw that was so profound that it precluded her promotion, any such implication would be entirely false—and we invite the AFBCMR to examine her record for itself from this perspective. It is a fine record, and certainly a promotable one.

Finally, since Maj Weingartner has asked for a direct promotion [AR 40], it is appropriate to make the Board and the Secretary's delegate aware of her latest achievements, so they may make a decision in light of her current, continuing high level of contribution to the mission of the United States Air Force. In 2002 she was Social Worker of the Year for the Air Combat Command [AR 287 (§ IV), 296 (§ VII)], and in 2003 she was Social Worker of the Year for the Air Force Special Operations Command. [AR 286 (§ VII), 293] Earlier this year she was named Social Worker of the Year for the South Georgia Chapter of the National Association of Social Workers. [AR 286 (§ VII), 294] Pertinent documents are enclosed. Her OPRs continue to strongly recommend her promotion to the grade of Lieutenant Colonel.

Our December 2, 2003 advisory opinion response observed:

If the AFBCMR takes the time to go through the actual evidence for itself, rather than treat the 3AF IG's conclusions as a fait accompli (as the advisory opinions clearly do) [AR 265-66, 278, 280], we believe it will see that Maj Weingartner has indeed suffered career injury. This is one of those unusual situations in which the

applicant's record is so unfair for such a long period of time that the SSB system cannot reasonably be expected to correct the matter, and that as a result, direct promotion is called for. That is our strong request. If, as our brief explained [AR 40-41], the AFBCMR is for any reason not disposed to recommend direct promotion, then it should at least mandate consideration by an SSB based on a fully corrected record. Any SSB that is conducted should be furnished a memorandum indicating that because of previous career injury, it should deem Maj Weingartner to have received a Definitely Promote on the PRF. [AR 277]

Nothing in the latest advisory opinions suggests a different course of action, especially given the AFBCMR's "abiding moral sanction to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief." *Duhon v. United States*, 461 F.2d 1278, 1281 (Ct. Cl. 1972), *quoting Caddington v. United States*, 147 Ct. Cl. 629, 178 F. Supp. 604, 607 (1959); *see also Thomas v. Cheney*, 925 F.2d 1407, 1423-24 (Fed. Cir. 1991).

AR 282-84.

All four of the advisory opinions took as a given the conclusions of the ROI instead of addressing the merits of plaintiff's particularized analysis and refutation of the five reasons cited in the ROI for the proposition that she would have been removed as Family Advocacy Element Leader in any event. AR 265-66, 278, 280.

On September 14, 2004, without conducting the evidentiary hearing plaintiff had requested, AR 18, 20 (§ 6), the AFBCMR denied her application. Its decision purports to summarize the parties' contentions, AR 3-17, but the single paragraph in which it states its conclusions on the merits of the case never addresses plaintiff's particularized analysis and refutation of the five reasons cited in the ROI for the proposition that she would have been removed as Family Advocacy Element Leader in any event, AR 29-35, contenting itself instead with the claim, as to the OPR issue,

10

that she "did not present any credible evidence from her senior rating chain or other agencies to support her contention of error or injustice," and, as to the PRF issue, that she "did not provide any support from her rating chain or MLR [Management Level Review] which would lead us to believe that the contested PRF as written, is an inaccurate depiction of her potential to serve in the next higher grade." AR 18 (¶ 3).

The AFBCMR agreed with the Air Force "Offices of Primary Responsibility" and adopted their rationale, claiming that there was no evidence to the contrary, *id.*, notwithstanding the voluminous evidence plaintiff had submitted in support of her claims that she had been a victim of career-injuring reprisal, gender-based discrimination, and unfair treatment. AR 22-262.

The AFBCMR evinced no recognition that under *Frizelle* the burden shifted to the Air Force to demonstrate that plaintiff would have been removed as Family Advocacy Element Leader in any event, AR 3-19 *passim*, its conclusion referring only to her "burden of establishing that she suffered either an error or an injustice. AR 18 (¶ 3).

For the Court's information, Major Weingartner will be involuntarily retired next year unless she is promoted. Her retirement will not affect this case since, if she prevails and is selected for promotion by an SSB after retirement, her record will be corrected to reflect retroactive promotion and she would have the option of being restored to active duty to continue her career.

11

*Standard of Review*

Decisions of the AFBCMR are reviewed under the familiar standards of the APA. 5 U.S.C. § 706; *Chappell v. Wallace*, 462 U.S. 296, 303 (1983); *Frizelle, supra*, at 176; *Ridgely v. Marsh*, 866 F.2d 1526, 1528 (D.C. Cir. 1989). Substantial evidence review looks at the whole record, including "contradictory evidence or evidence from which conflicting inferences could be drawn." *Morall v. Drug Enforcement Admin.*, 412 F.3d 165, 177 (D.C. Cir. 2005) (quoting *Lakeland Bus Lines, Inc. v. N.L.R.B.*, 347 F.3d 955, 962 (D.C. Cir. 2003) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 487 (1951))).

Among the agency's obligations is the duty to confront important issues and the evidence presented to it before rendering a final decision. *Arent v. Shalala*, 70 F.3d 610, 616 (D.C. Cir. 1995) (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

*Summary of Argument*

The AFBCMR made two basic errors in its decision. First, it failed to address Major Weingartner's demonstration that the reasons cited in the ROI for the proposition that she would have been removed as Family Advocacy Element Leader were unsustainable (and in the process failed to apply the shifted burden of proof under *Frizelle*). Second, instead of providing independent civilian review, it took as dispositive the fact that uniformed members of her chain of command and the IG did not support her claim. The first error violates a fundamental duty of any agency that makes adjudicatory decisions, and the second, by erecting an improper measure of deference to uniformed decision makers, violates the intent of Congress

in requiring the Secretary to use a "board[] of civilians" in deciding military record-correction cases.

*Argument*

I

THE AFBCMR'S DECISION MUST BE SET ASIDE
BECAUSE IT FAILS TO EXPLAIN ITS CONCLUSION IN
LIGHT OF MAJOR WEINGARTNER'S REFUTATION OF THE
FIVE REASONS THE ROI CITED FOR THE PROPOSITION THAT
SHE WOULD HAVE BEEN REMOVED AS ELEMENT LEADER
IN ANY EVENT AND FAILS TO RECOGNIZE THAT THE AIR
FORCE HAD THE BURDEN OF PROOF ON THAT ISSUE

A good deal of the Secretary's motion is spent discussing issues Major Weingartner raised before the AFBCMR but has not pressed here. Those parts are irrelevant.

What *is* relevant—and what the Secretary's motion assiduously avoids discussing—is what we highlighted in the complaint: the AFBCMR failed to explain in any way what it made of Major Weingartner's refutation of the IG's conclusion that she would have been removed in any event. That conclusion was pivotal to the case because the IG had found her substantive allegations substantiated in part, ar 28, 217, 223, and also concluded both that her internal complaint was a protected communication, AR 227 (¶ 1a), and that her removal as Element Leader was an unfavorable personnel action. *Id.* (¶ 2a).

The applicable law could not be clearer. No agency is at liberty to "fail[] to consider an important aspect of the problem" before it. *Motor Vehicle Mfrs., supra.* It can scarcely be said that the critical conclusions reached by the IG, on which the Air

Force uncritically relied,[3] and which were the literal culmination of the ROI, were not "an important aspect of the problem." Yet nothing in the AFBCMR's decision or the four advisory opinions whose rationale it expressly adopted, AR 18 (¶ 3), explains what the authors of any of those documents made of Major Weingartner's refutation, even though it was a prominent part of her very first submission to the board and the board parroted it in its summary of her contentions. *Compare* AR 27 *et seq. with* AR 4 *et seq.*

Because the decision and the advisory opinions which it adopts make it impossible to know what the AFBCMR made of Major Weingartner's refutation, and because her refutation is, to say the least, not facially frivolous, *see* AR 27-38, a remand is required. *Frizelle, supra*, at 177; *see also, e.g., Calloway v. Brownlee*, 366 F. Supp.2d 43, 55 (D.D.C. 2005) (citing *Mudd v. Caldera*, 26 F. Supp.2d 113, 123 (D.D.C. 1998)); *Robinson v. Dalton*, 45 F. Supp.2d 1 (D.D.C. 1998) (failure to respond to BCNR applicant's argument renders decision arbitrary; remanded for "more fully reasoned explanation"); *cf. Butler v. Barnhart*, 353 F.3d 992, 1002 (D.C. Cir. 2004). If the AFBCMR decides to disregard that refutation, it must say why, and not leave both Major Weingartner and the Court guessing. *Calloway, supra*, quoting *Puerto Rico High Educ. Assistance Corp. v. Riley*, 10 F3d 847, 853 (D.C. Cir. 1993).

A remand is separately required under *Frizelle* because the AFBCMR failed to place the burden of proof on the Air Force to demonstrate that Major Weingartner would have been removed as Element Leader in any event. If the Air

---

[3] *See* Point II *infra*.

Force remains unable to carry that burden, then the AFBCMR will have to address whether she sustained such career injury that she should be considered for a direct promotion or, failing that, SSB review. We address the terms of the remand in Point III *infra*.

II

THE AFBCMR ABDICATED ITS STATUTORY RESPONSIBILITY<br>BY TREATING SUPPORT OF MAJOR WEINGARTNER'S<br>MILITARY CHAIN OF COMMAND AND THE IG<br>AS NECESSARY FOR A FAVORABLE RULING

The other respect in which the AFBCMR's decision is fatally deficient is its remarkable observation, referring to the OPR issue, that "[t]he applicant did not present any credible evidence from her senior rating chain or other agencies to support her contention of error or injustice," AR 18 (¶ 3), as well as a comparable reference two sentences later concerning her PFR claim.[4] This part of the board's rationale, standing alone, warrants a remand on those issues in any event. *E.g., Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990) (remanding where agency applied incorrect evidentiary standard). But it is also important that the Court address the issue because a remand is plainly required for the reasons set forth in Point I and the board should not be left to repeat this fundamental error. It should be informed that its proceedings on remand on *any* issue cannot reflect the kind of abdication to uniformed personnel manifested in the quoted language.

---

[4] "The applicant did not provide any support from her rating chain or MLR which would lead us to believe that the contested PRF as written, is an inaccurate depiction of her potential to serve in the next higher grade." AR 18 (¶ 3).

15

It was not a casual act on Congress's part to insist, as § 1552(a)(1) does, that the service secretaries act through "boards of civilians of the executive part of th[e] military department" when exercising the power to correct error or remove injustice. After all, the power being exercised is one Congress—a civilian body— itself exercised (until the aftermath of World War II) through private bills. *Detweiler v. Peña*, 38 F.3d 591, 597 n.5 (D.C. Cir. 1994) (quoting *Ashe v. McNamara*, 355 F.2d 277, 280 (1st Cir. 1965)). The Secretary himself, of course, must be a civilian. 10 U.S.C. § 8013(a)(1), and, indeed, may not have been a regular officer in the preceding five years. 10 U.S.C. § 8013(a)(2). Requiring that the civilian board members, who are appointed by and serve at the pleasure of the civilian service secretary, 32 C.F.R. § 865.1, also be drawn from the executive part of the department is further evidence that the legislative intent was to put real distance between the § 1552 decision makers and the uniformed personnel whose actions are scrutinized under that provision.[5] "Congress wanted final decisions on records corrections to be made by civilians in each military department, not uniformed officers." *Strickland v. United States*, No. 05-5012 (Fed. Cir. Sept. 16, 2005), slip op. at 14 (explaining that in two Court of Claims cases "the Secretary effectively deferred to a professional military officer over the reasonable decision of the Board").

---

[5] Remarkably, even actions taken by the Secretary or the President are subject to correction board review. *See* 32 C.F.R. § 865.4(k). It would certainly be peculiar if a body with that kind of power in respect of decisions by our highest civilian political leaders would nonetheless have to defer to military personnel whose decisions they were charged with reviewing.

Given all this, the AFBCMR's language is seriously in tension with the basic decision by Congress "to provide an independent civilian review, outside of the military establishment," *Detweiler, supra*, placing record correction matters "outside the military chain of command and in the hands of civilians." *Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1403 n.9 (D.C. Cir. 1995); *see also Viles v. Ball*, 872 F.2d 491, 493 (D.C. Cir. 1989) ("Since the errors or injustices which might require correction were originally made by the military, Congress made it manifest that the correction of those errors and injustices was to be in the hands of civilians") (quoting *Weiss v. United States*, 408 F.2d 416, 421 (Ct. Cl. 1969) (quoting *Proper v. United States*, 154 F. Supp. 317, 326 (Ct. Cl. 1957)).

The correction boards' relationship to the uniformed services is not analogous to the courts' relationship to the correction boards. In fact, they serve different purposes: the correction board remedy—an intra-Executive Branch surrogate for private legislation, *see Detweiler, supra; Ogden v. Zuckert*, 298 F.2d 312, 314 (D.C. Cir. 1961)—is remedial in nature and hence broadly construed. *Caddington, supra; Kalista v. Sec'y of the Navy*, 560 F. Supp. 608, 611 (D. Colo. 1983); *Oleson v. United States*, 172 Ct. Cl. 9 (1965). Judicial review of administrative action, in contrast, extends across the boundary between the Executive and Judicial Branches and is sharply constrained, particularly—as the Court of Appeals has emphasized, *e.g., Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1513-14 (D.C. Cir. 1989)—in military matters. As a result, the fact that the scheme of *judicial* review under the APA "exudes deference," *id.*, has no bearing on how a BCMR approaches *its* task. We believe the AFBCMR's language quoted above incorrectly conflates the two, is

17

contrary to congressional intent, and should be expressly disapproved to avoid needless future litigation.

According to the cases, the AFBCMR has a duty "to determine, insofar as possible, the true nature of an alleged injustice." *Duhon, supra*. That does not mean it must be an investigative body, and the AFBCMR's regulations so state. 32 C.F.R. § 865.2(c). At the same time, the board cannot be passive (and certainly cannot decline to explain what it has made of an applicant's submissions, *see* Point I *supra*). The AFBCMR's language raises a serious concern about its own view of its functions.

The AFBCMR's regulations make no reference to a presumption of regularity. Even if they did, that would not support the approach implicit in the language referred to. The presumption of regularity applies, we submit, to routine decisions by military *administrators* (much like the business records exception to the hearsay rule), and not to *reprisal investigations* such as those performed by the IGs. Affording the results of such investigations such a presumption would materially erode the independence and authority of the civilian correction boards.

Congress intended the correction boards to be independent, as an element of the constitutional principle of civilian control of the military. It may not be—it is not—for the courts to oversee military personnel decisions except in a very limited sense, but it is emphatically the province of the courts to ensure that the BCMRs perform their function, and not recede into mere rubber stamps for those in uniform. Nothing would be further from the congressional plan. Because the AFBCMR improperly abdicated to uniformed investigators and treated the lack of

18

command support for Major Weingartner's case as fatal, the decision should be remanded in its entirety.

III

THE RELIEF SOUGHT IS SIMPLY A REMAND

As the complaint makes clear, Major Weingartner has not asked this Court to promote her, or to order the AFBCMR to do so. All she asks is that the case be remanded so the AFBCMR can render a decision on her application using the proper legal standards and addressing her points. This is an entirely appropriate function for the Court to perform. *E.g., Frizelle, supra; Homer v. Roche*, 226 F. Supp.2d 222, 225-27 (D.D.C. 2002) (denying direct promotion, remanding for explanation of AFBCMR decision). The Secretary correctly objected to one part of the relief we requested, and it is worth spending a moment on that subject.

The complaint asked (at 9) that the AFBCMR be required to critically review its ruling with respect to Major Weingartner's particularized analysis and refutation of the five reasons cited in the ROI for the proposition that she would have been removed as Element Leader in any event. It further asked (at 10) that, if the AFBCMR, having done so, found her entitled to relief but decided not to recommend a direct promotion, it should cause her record to be considered by the appropriate number of SSBs.

We included in the latter request a provision that there be "a memorandum indicating that because of previous career injury, she should be deemed to have received a 'Definitely Promote' PRF." We believe that would be proper for the AFBCMR to do, but, on reflection, there is no need to ask the Court to require that

19

conditional element of relief. Whether or not doing such a requirement would exceed the Court's power, as the Secretary suggests (at 17-18), *compare McDougall v. Widnall*, 20 F. Supp.2d 78 (D.D.C. 1998) (refusing to direct removal of allegedly defective PRFs), *with Chisolm v. United States*, 65 Fed. Cl. 497 (2005) (remanding with instructions to correct record, seemingly including PRF), Major Weingartner is content to leave that aspect of the matter to the AFBCMR's sound (and, if necessary, reviewable) discretion on remand. In the proposed Order submitted with this cross-motion, we have therefore recast the relief so that such a memorandum would have to be generated only if the AFBCMR deems it appropriate in order to avoid error or injustice, those being the tests set out in § 1552.

The Secretary's contention (at 18) that "the most relief" the Court can offer is to remand the decision not to grant an SSB is surely mistaken. A court can direct the correction of a military record in a proper case, *e.g., Roth v. United States*, 378 F.3d 1371, 1395-95 (Fed. Cir. 2004) (ordering divers record corrections), and certainly can remand for the purpose of ensuring that the agency has addressed the issues and explained its decision. We have been at pains not to exceed the proper limits of relief, and believe that the relief stated below (referring especially to ¶ b(3)) and provided for in ¶ 3 of the second decretal paragraph of the proposed Order submitted herewith respects and reflects the limits of this Court's authority.

*Conclusion*

For the foregoing reasons, the government's motion should be denied and plaintiff's cross-motion should be granted. The Court should enter judgment—

    a.  setting aside the decision of the AFBCMR; and

    b.  remanding the case with instructions to (1) review the entire record in light of the proper measure of deference to uniformed decision makers and the shifted burden under *Frizelle* and (2) critically review and explain its ruling with respect to plaintiff's particularized analysis and refutation of the five reasons cited in the ROI for the proposition that she would have been removed as Family Advocacy Element Leader in any event, and, if the AFBCMR finds her entitled to relief but decides not to recommend a direct promotion, (3) cause her record to be considered by the appropriate number of SSBs, as provided in 10 U.S.C. § 628(g)(1)(B), with a memorandum—should the AFBCMR deem this appropriate in order to avoid error or injustice—indicating that because of previous career injury, she should be deemed to have received a "Definitely Promote" PRF.

    The Court should also grant such other and further relief as may in the circumstances be just and proper.

Respectfully submitted,

*Eugene R. Fidell*

Eugene R. Fidell (112003)
Matthew S. Freedus (475887)
Feldesman Tucker Leifer Fidell LLP
2001 L Street, N.W.
Second Floor
Washington, DC 20036
(202) 466-8960

*Attorneys for Plaintiff*

September 26, 2005

21