UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NANCY E. WEINGARTNER, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil No. 05-1031 (HHK) |
| | ) | |
| PETE GEREN | ) | |
| Acting Secretary of the Air Force, | ) | |
| | ) | |
| *Defendant.* | ) | Judge Kennedy |

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION
TO CROSS-MOTION FOR SUMMARY JUDGMENT

*Introduction*

Our main brief demonstrated that the AFBCMR (1) never explained its ruling on a central part of Major Weingartner's case and (2) misapplied the burden of proof prescribed by the Court of Appeals. Instead of performing the kind of independent civilian review that Congress contemplated, it (3) abdicated to the uniformed personnel of her chain of command and the Inspector General ("IG"). This reply will examine precisely how the Secretary has responded to these three propositions.[1] If we are correct on any one, and we believe we are correct on all three, then Major Weingartner is entitled to a remand.

---

[1] Because the Secretary failed to submit a Statement of Genuine Issues, the facts set forth in Major Weingartner's Statement of Material Facts are deemed conceded. LCvR 7(h), 56.1; *e.g., Price v. Greenspan*, 374 F. Supp.2d 177, 183 (D.D.C. 2005), citing *Cruz v. American Airlines*, 150 F. Supp.2d 103, 115 n.8 (D.D.C. 2001); *see also Dean v. Hantman*, 2001 WL 1940434 (D.D.C. 2001) (Huvelle, J.), citing *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C. Cir. 1996).

We recognize that military personnel issues may be relatively unfamiliar territory. As a practical matter, that unfamiliarity almost certainly tends to benefit the government. We respectfully adhere to our request for oral argument.

*Argument*

Our main brief identified three questions presented. We address the Secretary's responses *seriatim*.

1. DID THE AFBCMR IMPROPERLY FAIL TO EXPLAIN ITS CONCLUSION IN LIGHT OF MAJOR WEINGARTNER'S REFUTATION OF THE FIVE REASONS THE ROI CITED FOR THE PROPOSITION THAT SHE WOULD HAVE BEEN REMOVED AS FAMILY ADVOCACY ELEMENT LEADER IN ANY EVENT?

Major Weingartner's submission to the AFBCMR was clear and direct in its refutation of the five reasons cited in the IG's report of investigation for the proposition that she would have been removed as Family Advocacy Element Leader in any event. AR 29-35. The AFBCMR's decision recites that refutation in its summary of the parties' submissions, AR 5-7, but the analysis portion of the decision, AR 18, makes no attempt whatever to explain why that refutation was incorrect. The decision adopts the advisory opinions submitted by the Air Force, *id.*, but those advisory opinions also do not confront Major Weingartner's refutation; they simply take the IG's bottom line as a given. AR 265-66, 278, 280.

An agency must do more than merely cut and paste into its decision a party's contentions. A mere catalogue is insufficient. *Muse v. United States*, 21 Cl. Ct. 592, 611 (1990), quoting *Hary v. United States*, 618 F.2d 704, 708 n.6 (1980). The agency must both *analyze* those contentions and disclose what it *makes* of them. The

AFBCMR did neither on a central point of Major Weingartner's case.[2]

We have no quarrel with the familiar doctrine that an agency decision need not be a "model of clarity," and it is no wonder the Secretary would seek to sidestep the AFBCMR's deficient work product by invoking that doctrine. But the Secretary's position asks far more of that doctrine than the decision on review will bear: this is not simply a little fuzziness that nonetheless permits a reviewing court to grasp what the agency made of the argument at issue—*it is a complete failure.* Only by indulging in guesswork can the Court claim to know even roughly what the AFBCMR thought of Major Weingartner's detailed and entirely logical refutation of the IG's "in any event" analysis. Guesswork is not the Court's function. A remand is required to remedy this gaping flaw in the decision below.

> 2. DID THE AFBCMR IMPROPERLY FAIL TO SHIFT TO THE AIR FORCE THE BURDEN OF PROOF AS TO WHETHER MAJOR WEINGARTNER WOULD HAVE BEEN REMOVED AS FAMILY ADVOCACY ELEMENT LEADER IN ANY EVENT?

Aside from wasting the Court's time by asserting—incorrectly—(at 5 n.3) that Major Weingartner failed to furnish a complete citation to a leading case decided by

---

[2] In this connection it is instructive to read carefully the last sentence on page 5 of the Secretary's opposition. He claims the AFBCMR (1) "acknowledged Plaintiff's arguments," (2) "addressed each of Plaintiff's requests," and (3) "properly exercised its discretion to deny Plaintiff's requests." It is of course true that the AFBCMR essentially reproduced Major Weingartner's refutation of the IG's five reasons when it recited the parties' contentions, and it is equally true that it denied her requests for relief in the one-paragraph discussion and the decretal paragraph found at AR 18. But it *never* analyzed her refutation, and this sentence from the Secretary's opposition carefully avoids claiming otherwise. The failure is both understandable—what alternative did the AFBCMR leave the Secretary?—and fatal.

the Court of Appeals,[3] the Secretary's effort to sidestep the AFBCMR's clear *Frizelle* error is without merit. That case, consistent with decisions such as *Engels v. United States*, 678 F.2d 173, 175-76 (Ct. Cl. 1982), and *Golding v. United States*, 48 Fed. Cl. 697, 738 (2001), allocates the burden of proof in cases where, as here, the government contends that a particular adverse military personnel action would have occurred in any event, *i.e.*, even if the officer's record had been properly constituted.

*Frizelle* controls this case. It applies in two ways.

First, the record contains the IG's findings that Major Weingartner's substantive allegations were substantiated in part, AR 28, 217, 223, that her internal complaint was a protected communication, AR 227 (¶ 1a), and that her removal as Family Advocacy Element Leader was an unfavorable personnel action. *Id.* (¶ 2a). That is all that is required to shift the burden. This is plainly what the officer who conducted the IG investigation believed, referring repeatedly to the final item (under the IG's "acid test")[4] of whether the adverse action would have occurred in any event. AR 226, 228-29, 231, 236.

Whether the same action would have occurred in any event is, when the other conditions are met for a reprisal claim, in the nature of an affirmative defense. The party asserting such a defense has the burden of proving it, rather

---

[3] Major Weingartner furnished complete citations to *Frizelle v. Slater*, 111 F.3d 172 (D.C. Cir. 1997), in her cross-motion (at 9) and Statement of Material Facts (at 7). *See also* AR 283.

[4] We are attaching the pertinent parts of the Air Force regulation on IG complaints in force at the time of the investigation in this case. Air Force Instruction 90-301 (Aug. 12, 1999), *available at* http://www.milpagan.org/RC/REGS/afi90-301.pdf. *See*

than the opposing party having a duty to *disprove* it. This is not only settled doctrine in the law of employment discrimination and reprisal generally,[5] but is expressly the rule in military reprisal cases such as this. Thus, the Department of Defense IG's *Guide to Investigating Reprisal and Improper Referrals for Mental Health Evaluations* (Feb. 6, 1996) (Inspector General Guide 7050.6), a copy of which is attached as Pl. Ex. B, "**The responsible management officials** must establish that they would have decided, taken, or withheld the same personnel action(s) even if the complainant had not made or prepared a protected communication." IGDG 7050.6, at 10 (¶ 2.6) (emphasis in original).[6] If the three antecedent questions are answered in the affirmative, "[t]he burden then shifts to the RMO [responsible management official] to establish that the taking, threatening, or withholding of the personnel action was not done in reprisal." Daniel A. Lauretano, *The Military Whistleblower Protection Act and the Military Mental Health Evaluation Protection Act*, ARMY LAW., Oct. 1998, at 1, 9 & n.74.

The Secretary's rejection (at 6) of this fundamental proposition, and his

---

Pl. Ex. A, pp. 79 (¶ 3.19.3), 80 (¶ 3.21), 81 (Fig. 3.3).

[5] *E.g., Price Waterhouse v. Hopkins*, 490 U.S. 228, 244 (1989) (Title VII); *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977) (First Amendment), cited in *Koszola v. Federal Deposit Ins. Corp.*, 393 F.3d 1294, 1302 (D.C. Cir. 2005) (Roberts, J.); *Jones v. Washington Metropolitan Area Transit*, 205 F.3d 428, 433 (D.C. Cir. 2000) (Title VII and ADEA).

[6] *See also id.* at 15 ("Even if you find that the responsible management officials offered credible justification for the personal [*sic*] action based on the complainant's performance or conduct, you may not rule out reprisal until you have established that management would have taken the exact same course of action even if the complainant had not made or prepared a protected communication." . . . "The burden is on you to ensure that you have the necessary evidence to objectively decide this question.").

contention that it was incumbent on Major Weingartner to prove not only that she made a protected communication, that her communication was substantiated in part, and that she suffered adverse personnel action (removal from her position as Family Element Team Leader), but *also* that she would not have been removed in any event is also contrary to the settled allocation of the burden of proof in *non-*reprisal record-correction cases where the board has concluded that the adverse action would have occurred in any event. This is what *Frizelle* teaches, and it would be odd indeed for the burden on such an issue to shift in garden-variety passover cases but not in reprisal cases under 10 U.S.C. § 1034.

Second, whatever one might say about other parts of the AFBCMR's decision, it cannot be denied that the board accepted the Air Force's confession of error with respect to the duty title reflected in Major Weingartner's service record. AR 18. Having done so, the board had a duty to shift to the Air Force the burden of showing that that error was harmless. Nothing in the decision indicates that it understood the burden to have been on the Air Force. This, too, violates *Frizelle*.

The AFBCMR asserted that "it is highly unlikely this error was the sole cause for [Major Weingartner's] nonselection." AR 18. This reveals that it was imposing a "but-for" proof requirement, which is directly contrary to cases such as *Sanders v. United States*, 594 F.2d 804, 816-17 (Ct. Cl. 1979), and *Hary, supra*. The law does not require the error to have been the "sole cause" for the adverse action, but looks rather to whether he or she would not have been promoted in any event.

Worse yet, as the Federal Circuit has observed, to apply a harmless error test in cases where (as here) the officer seeks a special selection board, "would

paradoxically force the civilian corrections boards and the court" into making essentially military promotion decisions. *See Porter v. United States*, 163 F.3d 1304, 1319 (Fed. Cir. 1998), *cert. denied*, 528 U.S. 809 (1999). To the extent that he cautions against embroiling the AFBCMR and the Court in personnel decision making, the Secretary is thus hoist with his own petard. It need only be added that the Air Force never submitted the kind of comparative evidence from which it could be shown that Major Weingartner's passovers for promotion were inevitable. *See Quinton v. United States*, 64 Fed. Cl. 118, 126-27 (2005), quoting *Engels, supra*, at 178 n.13.

The Secretary's attempt (at 6 n.4) to distinguish *Frizelle* on its facts trivializes that case's statement of the rule. He advances a variety of factors in support of the proposition that there was no material error, but those factors nowhere appear in the two sentences in the single, crucial discussion paragraph of the AFBCMR decision that were dedicated to the job title error. AR 18.

The advisory opinion that confessed the error says "we strongly believe this error on its own was not likely the key to the applicant's nonselection for promotion, but instead the result of an assessment of her entire selection record." AR 280A.[7] The test is more onerous than this implies: nonselection must be "definitely unlikely or excluded." *Engels, supra*, at 174, quoted in *Frizelle, supra*, at 179, and *Quinton, supra*, at 125.

For his part, the Secretary materially misstates the burden of proof applicable

---

[7] The sentence is, to borrow the Secretary's phrase, not a model of clarity, but we assume the drafter intended to say not that the job title error was "the result of an assessment of her entire selection record," but rather that her nonselection was.

in proceedings before the AFBCMR (as opposed to the standard of review for judicial review purposes). Relying on *Hoffman v. United States*, 16 Cl. Ct. 406, 411 (1989), he asserts (at 7) that "neither military boards nor federal courts should interfere [with military personnel evaluations] unless there is clear and convincing evidence of error." This formulation of the standard to be applied by the correction boards was not addressed, much less endorsed, in the Federal Circuit's affirmance of *Hoffman*, 894 F.2d 380 (Fed. Cir. 1990), which the Secretary neglected to cite, and in fact, it is incorrect.

For one thing, the AFBCMR's decision does not invoke the clear and convincing evidence standard; it only refers to the fact that "the evidence presented did not demonstrate the existence of probable error or injustice," AR 18, clearly echoing the AFBCMR's regulations' demand for "sufficient evidence of probable material error or injustice." Def. Ex. 1, ¶ 4.1; 32 C.F.R. § 865.4(a). Not a syllable in the regulations (or the AFBCMR's "guide," Def. Ex. 2, discussed in Point 3 below) suggests a higher burden of proof. The Secretary is bound by the regulation, *Service v. Dulles, supra*, and even if he were not, any more exacting test would run afoul of the remedial purpose of the record-correction statute. *See* Cross-Motion at 17.[8] But the Secretary—

---

[8] The Board for Correction of Military Records of the Coast Guard, which is governed by the same statute as the AFBCMR, *see* 10 U.S.C. § 1552(a)(1), addressed the burden of proof in an exhaustive and scholarly decision three years ago, and concluded that the proper test is familiar civil standard of the preponderance of the evidence. BCMR Dkt. No. 2000-194 (CGBCMR 2002), at 35-41. A copy is attached as Pl. Ex. C. Its regulations now reflect that standard, which we submit is the correct one. *See* 33 C.F.R. § 52.24(b). The Court should make it clear that the services—whose personnel swear the same oath, receive the same pay and allowances, are subject to the same disciplinary system, and serve side by side in increasingly "joint" operational efforts on the Nation's behalf—cannot go their separate ways on a matter this fundamental under a single Act of Congress.

who acts through the AFBCMR, *see* 10 U.S.C. § 1552(a)(1), and has the final word on its decisions, *Strickland v. United States*, 423 F.3d 1335 (Fed. Cir. 2005)—ought to know, and if he says this is the evidentiary standard the AFBCMR applied, as his opposition suggests, then the decision on review must be set aside even if there were no other defects in it. *E.g., Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990) (remanding where agency applied incorrect evidentiary standard).

The AFBCMR's decision on this aspect of the case also does not survive scrutiny because—whatever the advisory opinion writer may have meant, *see* note 7 *supra*—the AFBCMR deemed the issue to be whether the error was the "sole cause" of nonselection, and second, because, under *Porter*, where nonselection for promotion is at issue, the harmlessness of a service record error is to be decided not by the AFBCMR but by the uniformed members of a selection board. The AFBCMR's inattention to Major Weingartner's reference to *Frizelle* suggests that it was on automatic pilot and leaves the Court no alternative but to remand with instructions to reconsider the matter employing both the correct burden of proof and the correct allocation of that burden.

> 3. DID THE AFBCMR VIOLATE CONGRESSIONAL INTENT BY DEFERRING TO UNIFORMED INVESTIGATORS AND INSISTING THAT MAJOR WEINGARTNER NEEDED TO HAVE THE SUPPORT OF HER CHAIN OF COMMAND IN ORDER TO PREVAIL?

The Secretary's opposition never even attempts to connect with the core of Point II (pp. 15-19) of Major Weingartner's cross-motion. The closest he comes is to cite the AFBCMR's "guide." Def. Ex. 2. That "guide" is not a regulation, and

antedates the other, subsequent document the Secretary attached to his opposition, which *is*. *See* Def. Ex. 1. The "guide" does not have the force of law, and does not purport to state evidentiary requirements, contrary to the Secretary's use (at 6 line 8) of the word "must" in describing it.

The "guide," which the AFBCMR never invoked in ruling against Major Weingartner, broadly advises (¶ 4.3) that "[n]ormally, the best evidence is statements from persons who have direct knowledge or involvement. For example, statements from persons in your rating chain if you are contesting a performance report." The "guide" does not demand chain-of-command evidence; cautions (¶ 4.3) that "[t]his is only a general rule, however. You must decide what evidence will be support your case;" and squarely states (¶ 4.2) that "[y]our own statement is important."

Nor is it surprising that the "guide" does not establish a hard-and-fast rule requiring (as the AFBCMR seemed to do, AR 18, and as the Secretary now seeks to defend) support from the applicant's chain of command. After all, *this is a reprisal case*, and in the nature of such cases, chain-of-command support is obviously improbable. To insist on such support is to create a perfect closed system. It is difficult to conceive of a rule that would be more antithetical to congressional intent or the practical realities of the workplace, military or civilian.

*Conclusion*

For the foregoing reasons and those previously stated, Major Weingartner's cross-motion for summary judgment should be granted. The Court should enter judgment—

   a. setting aside the decision of the AFBCMR; and

   b. remanding the case with instructions to (1) review the entire record in light of the proper measure of deference to uniformed decision makers and the shifted burden under *Frizelle* and (2) critically review and explain its ruling with respect to plaintiff's particularized analysis and refutation of the five reasons cited in the ROI for the proposition that she would have been removed as Family Advocacy Element Leader in any event, and, if the AFBCMR finds her entitled to relief but decides not to recommend a direct promotion, (3) cause her record to be considered by the appropriate number of SSBs, as provided in 10 U.S.C. § 628(g)(1)(B), with a memorandum—should the AFBCMR deem this appropriate in order to avoid error or injustice—indicating that because of previous career injury, she should be deemed to have received a "Definitely Promote" PRF—

and grant such other and further relief as may in the circumstances be just and proper.

Respectfully submitted,

*Eugene R. Fidell*
Eugene R. Fidell (112003)
Matthew S. Freedus (475887)
Feldesman Tucker Leifer Fidell LLP
2001 L Street, N.W., Second Floor
Washington, DC 20036
(202) 466-8960

*Attorneys for Plaintiff*

October 25, 2005

11