BY ORDER OF THE  
SECRETARY OF THE AIR FORCE

AIR FORCE INSTRUCTIION 90-301

12 AUGUST 1999

Command Policy

INSPECTOR GENERAL COMPLAINTS



COMPLIANCE WITH THIS PUBLICATION IS MANDATORY

NOTICE:  This publication is available on the SAF/AFDPO WWW site at:  http//afpubs.hq.af.mil. .

OPR: SAF/IGQ (Maj Adolfo J. Fernandez)  
Supersedes AFI 90-301, 1 April 1999

Certified by: SAF/IG (Lt General Nicholas Kehoe)  
Pages:  169  
Distribution: F

★This instruction implements Air Force Policy Directive (AFPD) 90-3, *Inspector General -- Complaints Program;* Department of Defense (DoD) Directive 5505.6, *Investigations of Allegations Against Senior Official of the Department of Defense;* DoD Directive 7050.6, *Military Whistleblower Protection;* DoD Directive 6490.1, *Mental Health Evaluations of Members of the Armed Forces;* DoD Directive 7050.1, *Defense Hotline Program;* DoDI 7050.7, *Defense Hotline Procedures;* DoDI 7050.8, *Defense Hotline Quality Assurance Review (QAR) Program;* DoDI 6490.4, *Requirements for Mental Health Evaluations of Members of the Armed Forces;* and President's Council on Integrity and Efficiency, *Quality Standards for Investigations, September 1997.* It applies to all military personnel subject to the Uniform Code of Military Justice (UCMJ) including Air Force Reserve personnel, to the Air National Guard, and to all Air Force civil service personnel subject to civilian administrative or disciplinary action under applicable directives or implementing instructions.  Military members who violate the prohibition against reprisal in paragraph 3.16 of this instruction are subject to prosecution under Article 92 of the UCMJ.  ANG personnel not on federal status are subject to the applicable State military code or administrative action, as appropriate.  Civilians who violate this prohibition are subject to administrative or disciplinary action under applicable directives or implementing instructions governing civilian disciplinary or administrative action.

This instruction provides for the receipt, processing, conduct, and quality review of Inspector General (IG) investigations, and explains how individuals may present personal complaints for resolution.  It formalizes Air Force commitment to prevent and eliminate fraud, waste, and abuse (FWA) and gross mismanagement and to conduct IG investigations, and it establishes an office to monitor the FWA program, administer the Air Force Hotline Program, and assist with the Defense Hotline Program.  It assigns responsibilities and prescribes procedures for reporting and processing all allegations or adverse information of any kind against Air Force Senior Officials, colonels (grade of O-6), colonel selects and GM/GS-15, and complaints involving allegations of reprisal or improper referral for mental health evaluations.

This instruction requires collecting and maintaining information protected under the Privacy Act of 1974 as authorized by 10 U.S.C. 8013 and 8020.  System of Records Notice F090 AF IG B, *Inspector General Records,* applies and AF Form 102, *Inspector General Personal and Fraud, Waste and Abuse Complaints Registration,* contains a Privacy Act statement. The reporting requirements in this instruction (except for RCS: HAF-IGO [M] 7701) are exempt from licensing in accordance with AFI 37-124, *The Information Collections and Reports Management Program; Controlling Internal, Public, and Interagency Air Force Information Collections.*

Major Commands (MAJCOMs), Field Operating Agencies (FOAs), Direct Reporting Units (DRUs) or equivalent can supplement this instruction. **However,** any supplement **must** be approved by SAF/IGQ.

Commanders may use this directive as guidance but **not** as the authority for commander-directed inquiries or investigations. Commanders should use the inherent authority of command (rather than this instruction) to authorize commander-directed administrative inquiries and investigations conducted outside of IG channels.

*★SUMMARY OF REVISIONS*

This revision incorporates interim change (IC) 99-1 which provides guidance on the source of authority of the Air Force Inspector General; makes commanders the release authority for commander-directed investigations unless they pertain to Senior Officials; makes Appointing Authorities the release authority for Official Use Requests submitted by commanders for the purpose of determining appropriate command action; clarifies procedures for complaints simultaneously filed with different levels and complaints which have been previously addressed; clarifies the definition of the terms Assist, Category I investigation, Appointing Authority, self-investigation, and protected communication (disclosure); eliminates the use of the HCR format to document Category I investigations; implements a standard ROI format and case file for Category I investigations; combines the Findings, Analysis, and Conclusion portions of the ROI for Category II investigations; clarifies the requirements for notification of subjects upon completion of IG investigation; requires additional legal review when a higher-level IG changes findings of a lower-level investigation; clarifies the right of a civil service employee to have union representation during an interview and the rights advisement requirements concerning civilian witnesses; clarifies notification requirements for congressionals received at lower levels; updates Attachment 3 (Mental Health Referral Evaluation Form); and changes the term "Social Actions" to "Military Equal Opportunity" throughout the publication. See last attachment of the publication, IC 99-1, for the complete IC. A star indicates revision from the previous edition.

**Chapter 1 – THE INSPECTOR GENERAL (IG) COMPLAINTS PROGRAM** ...................... 9
Section 1A  The Air Force Inspector General (IG) System ............................................................. 9
   1.1. Overview. ........................................................................................................................ 9
Section 1B  Authority of the Air Force Inspector General ............................................................... 9
   1.2. Statutory Authority. ........................................................................................................ 9
   1.3. Investigations not Covered by the Authority of the IG System ..................................... 9
   1.4. Authority to Direct Investigations ................................................................................... 9
   1.5. Appointing IGs Other Than Those in Authorized Positions ........................................... 10
   1.6. Authority for IG Access to Air Force Records ............................................................... 10
Section 1C  The Air Force Inspector General Program ................................................................... 10
   1.7. Program Policy ................................................................................................................ 10
   1.8. Mission Focus .................................................................................................................. 10
Section 1D  Roles and Responsibilities ........................................................................................... 11
   1.9. SAF/IG Responsibilities .................................................................................................. 11
   1.10. SAF/IGS Responsibilities ............................................................................................... 12
   1.11. SAF/IGQ Responsibilities ............................................................................................... 12
   1.12. MAJCOM, FOA and DRU IG Responsibilities ............................................................. 13
Section 1E  The Installation IG Program .......................................................................................... 13
   1.13. Installation IG Program Background .............................................................................. 13
   1.14. Establishment of the Installation IG Program ................................................................ 13
   1.15. Installation IG Organization ............................................................................................ 114
   1.16. Associate (formerly tenant) Unit IGs .............................................................................. 14
   1.17. Investigative Requirements ............................................................................................. 14

*AFI 90-301   12 AUGUST 1999*                                                                                                                    *3*

| | |
|---|---|
| 1.18. Assigning Additional Duties to Installation IGs | 14 |
| Section 1F Commanders and the Inspector General Program | 14 |
| 1.19. How the IG System Helps Command | 14 |
| 1.20. Roles of the IG in Relation to the Commander | 14 |
| 1.21. Commander Support of the IG System | 15 |
| 1.22. Removing Complaints from the IG System | 15 |
| 1.23. Commander Directed Investigations and Inquiries (CDIs) | 15 |
| 1.24. Approval of Official Travel to Submit Complaints | 16 |
| Section 1G Reporting Requirements | 16 |
| 1.25. Key Terms | 16 |
| 1.26. Reporting Allegations Against Senior Officials | 16 |
| Figure 1.1. Notification Letter for Reporting Allegations Against a Senior Official | 17 |
| 1.27. Reporting Allegations Against Colonels (or equivalent) | 17 |
| Figure 1.2. Notification Letter for Reporting Allegations Against a Colonel (or equivalent) | 18 |
| 1.28. Documents Required by SAF/IGQ on Non-IG Cases or Investigations Against Colonels (or equivalent) | 18 |
| Table 1.1. Documents Required by SAF/IGQ for non-IG Cases on Colonels (or equivalent) | 19 |
| Section 1H Administering the IG Complaints and FWA Program | 20 |
| 1.29. Key Terms | 20 |
| 1.30. Administrative Policy | 20 |
| 1.31. Data Management | 20 |
| Section 1I Training Requirements | 20 |
| 1.32. IG Training Requirements | 20 |
| 1.33. Investigating Officer Training Requirements | 21 |
| Section 1J Education of Air Force Personnel | 21 |
| 1.34. Educating Air Force Personnel on the IG System | 21 |
| Section 1K Maintenance of IG Records | 22 |
| 1.35. Marking IG Records | 22 |
| 1.36. Protection of IG Records | 22 |
| 1.37. Protecting Privacy Interests | 22 |
| 1.38. Maintenance and Disposition of IG Records | 23 |
| Section 1L Filing an IG Complaint | 23 |
| 1.39. Policy for Filing an IG Complaint | 23 |
| 1.40. Complaints Not Appropriate for the IG System | 24 |
| Section 1M Complainant's Rights and Responsibilities | 24 |
| 1.41. Complainant's Rights | 24 |
| 1.42. Requests to Delay Command Action | 25 |
| 1.43. Complainant's Responsibilities | 25 |
| Section 1N How to File an IG Complaint | 26 |
| 1.44. When to Use | 26 |
| 1.45. Procedures for Filing an IG Complaint | 26 |
| Table 1.2. How to File a Complaint | 26 |
| Section 1O Agencies with Responsibilities to the IG System | 26 |
| 1.46. Staff Judge Advocates | 26 |

|   |   |
|---|---|
| 1.47. The General Counsel of the Air Force (SAF/GC) | 27 |
| 1.48. The Judge Advocate General (AF/JA) | 27 |
| 1.49. The Deputy Chief of Staff, Personnel | 28 |
| 1.50. Military Equal Opportunity | 28 |
| 1.51. The Secretary of the Air Force, Legislative Liaison, Congressional Inquiry Division (SAF/LLI) | 28 |
| 1.52. The Air Force Inspection Agency (AFIA) | 29 |
| 1.53. The Air Force Office of Special Investigations (AFOSI) | 29 |
| 1.54. The Air Force Audit Agency (AFAA) | 29 |
| 1.55. The Secretary of the Air Force, Office of Public Affairs (SAF/PA) | 30 |
| 1.56. The Headquarters Air Force Directorate of Security Forces (HQ USAF/XOF) | 30 |
| 1.57. The Surgeon General of the Air Force (HQ USAF/SG) | 30 |
| 1.58. The Office of the Assistant Secretary of the Air Force (Financial Management and Comptroller) (SAF/FM) | 30 |
| **Chapter 2—MANAGING IG COMPLAINTS** | **31** |
| Section 2A  Overview | 31 |
| 2.1. In this Chapter | 31 |
| 2.2. Key Terms | 31 |
| 2.3. Confidentiality Policy | 31 |
| 2.4. Policy on Management of IG Complaints | 31 |
| 2.5. The 14-Step Complaints Process | 32 |
| Table 2.1. The 14-Step Complaints Process | 32 |
| Section 2B  Step 1: Contact | 32 |
| 2.6. Policy on Receiving Complaints | 32 |
| 2.7. Procedures for Receiving a Complaint | 32 |
| Table 2.2. How to Conduct a Complaint Clarification | 33 |
| 2.8. Administrative Procedures for Processing a Complaint | 33 |
| Table 2.3. Processing Complaints | 33 |
| Section 2C  Step 2: Conducting a Complaint Analysis | 33 |
| 2.9. Requirements | 33 |
| 2.10. Key Terms | 34 |
| 2.11. Processing Allegations of a Special Nature | 34 |
| Table 2.4. Processing Special Interest Complaints | 34 |
| 2.12. Handling Civilian Complaints | 34 |
| 2.13. How to Conduct a Complaint Analysis | 34 |
| Section 2D  Step 3: Referring, Transferring, Dismissing, Assisting, or Tasking a Complaint | 35 |
| 2.14. Key Terms | 35 |
| 2.15. Higher Headquarters Taskings | 35 |
| 2.16. Policy When Another Appeal or Grievance Channel Exists | 35 |
| 2.17. Referral Agencies and Grievance Channels | 35 |
| Table 2.5. Matters Not Appropriate for the IG Complaint System | 36 |
| 2.18. Referring a Complaint | 37 |
| Table 2.6. How to Refer a Complaint | 37 |
| 2.19. Transferring a Complaint | 37 |
| Table 2.7. When to Transfer a Complaint to Another IG | 38 |

*AFI 90-301   12 AUGUST 1999*                                                                                                                  5

| | |
|---|---|
| Table 2.8. How to Transfer a Complaint | 38 |
| 2.20. Dismissing a Complaint | 39 |
| Table 2.9. When to Dismiss a Complaint | 39 |
| 2.21. How to Dismiss a Complaint | 39 |
| Table 2.10. How to Dismiss a Complaint | 39 |
| 2.22. Assisting a Complainant | 39 |
| Table 2.11. How to Assist a Complainant | 40 |
| 2.23. Policy for Conducting Category I and Category II Investigations | 40 |
| 2.24. Notification Requirements for Investigations on Lt Cols (not colonel-selects) and Below | 40 |
| Table 2.12. Notification Matrix for Investigations on Lt Cols (not colonel-selects) and Below (Pre-investigation and Investigation Phases) | 41 |
| 2.25. Policy for Appointing an Investigating Officer | 41 |
| 2.26. Appointing Authority's Responsibilities Concerning IO Taskings | 42 |
| 2.27. How to Appoint an IO | 42 |
| Figure 2.1. Sample IO Appointment Letter | 43 |
| 2.28. Requirement for Progress Reports | 43 |
| Figure 2.2. Sample Progress Report | 44 |
| 2.29. Requirement for Interim Responses (IR) | 44 |
| Section 2E Step 4: Preparing for the Investigation | 44 |
| 2.30. Key Terms | 44 |
| 2.31. Requirements for Investigation Preparation | 45 |
| Section 2F Step 5: Investigating a Complaint | 45 |
| 2.32. Policy on Investigating Complaints | 45 |
| 2.33. Key Terms | 45 |
| 2.34. Responsibilities of IOs | 45 |
| 2.35. Gathering Evidence | 46 |
| 2.36. Interviewing Witnesses | 46 |
| 2.37. Persons Present During an Interview | 48 |
| 2.38. Civilian Employees Represented by Unions | 48 |
| 2.39. Policy Regarding Rights Advisements | 48 |
| 2.40. Investigative Techniques | 49 |
| 2.41. Policy Regarding Subject/Witness "Hand-offs" | 50 |
| Section 2G Step 6: Writing the Report | 50 |
| 2.42. Standard of Evidence | 50 |
| 2.43. Analyzing the Evidence | 51 |
| 2.44. Category of Findings | 51 |
| 2.45. Policy Regarding Report Writing | 51 |
| 2.46. Rules for a Good Report | 52 |
| 2.47. Case File Format | 52 |
| Figure 2.3. Case File Format for Non-Senior Official Investigations | 53 |
| 2.48. Report of Investigation (ROI) Format | 53 |
| Figure 2.4. ROI Title Page for Non-Senior Official Investigations | 54 |
| Figure 2.5. ROI Format for Non-Senior Official Investigations | 55 |
| 2.49. Summary Report of Investigation (SROI) Format | 56 |

Figure 2.6. SROI Format ........................................................................................................... 57
Figure 2.7. ROI Format for Category I Investigations .......................................................... 58
    2.50. Hotline Completion Report (HCR) ............................................................................ 58
    2.51. Other Required Forms/Checklists .............................................................................. 59
Section 2H  Step 7: IG Quality Review .................................................................................. 59
    2.52. Requirement for IG Quality Reviews ........................................................................ 59
    2.53. Disagreement Between IO and IG ............................................................................. 59
Section 2I  Step 8: Technical Review ..................................................................................... 59
    2.54. When is a Technical Review Necessary? .................................................................. 59
Section 2J  Step 9: Legal Review ............................................................................................ 60
    2.55. Requirement for Legal Reviews ................................................................................ 60
Table 2.13. When are Legal Reviews Required? .................................................................... 61
Table 2.14. Actions to Take Based on Legal Sufficiency Review ......................................... 61
Section 2K  Step 10: Re-Working the Report ........................................................................ 61
    2.56. When are Reports Returned for Re-Working ............................................................ 61
Section 2L  Step 11: Closing the Case .................................................................................... 61
    2.57. Key Terms .................................................................................................................. 61
    2.58. Appointing Authority Approval ................................................................................ 62
    2.59. Closure Requirements ................................................................................................ 62
    2.60. Notification Requirements for Case Closures ........................................................... 62
Figure 2.8. Sample Notification Memorandum to Subject's Commander ............................. 63
Table 2.15. Notification Matrix for Closure of Investigation on Lt Cols (not colonel-selects) and Below ..... 64
    2.61. Responding to Complainants ..................................................................................... 64
Section 2M  Step 12: Follow-Up ............................................................................................. 65
    2.62. Placing Cases in Follow-up ....................................................................................... 65
Section 2N  Step 13: Higher Headquarters (NAF/MAJCOM) Review ................................. 65
    2.63. Requirement for Higher Headquarters Quality Review ............................................ 65
    2.64. Disagreement with Findings ...................................................................................... 66
Section 2O  Step 14: SAF/IGQ Review .................................................................................. 66
    2.65. Requirement for SAF/IGQ Review ........................................................................... 66

**Chapter 3 – SPECIAL COMPLAINTS** .............................................................................. 68
Section 3A  Senior Officials .................................................................................................... 68
    3.1. Key Terms ................................................................................................................... 68
    3.2. Policy on Investigations of Allegations Against Senior Officials .............................. 68
    3.3. Notification Requirements .......................................................................................... 68
Table 3.1. Senior Official Notification Matrix ....................................................................... 69
    3.4. Investigating Allegations Against Senior Officials .................................................... 69
    3.5. Closing a Senior Official Investigation ...................................................................... 70
    3.6. SOUIFs on General Officers ....................................................................................... 70
Section 3B  Colonels, Colonel-selects and GS-15s/GM-15s .................................................. 71
    3.7. Key Terms ................................................................................................................... 71
    3.8. Policy on Investigating Allegations Against Colonels (or equivalent) ...................... 71
    3.9. Colonels (or equivalent) Assigned to Joint Activities ................................................ 71
    3.10. Notification Requirements ........................................................................................ 72

*AFI 90-301  12 AUGUST 1999*                                                                                                    7

Table 3.2.  Notification Matrix for Colonels (or equivalent) Cases ............................................................... 72
    3.11.  Investigating Allegations Against Colonels (or equivalent)........................................................ 73
    3.12.  Closing a Colonel (or equivalent) IG Investigation..................................................................... 73
Table 3.3.  Documents required by SAF/IGQ on Colonel (or equivalent) Cases ........................................... 73
    3.13.  CDIs on Colonels (or equivalent).................................................................................................. 74
    3.14.  SOUIFs on Colonels...................................................................................................................... 74
Section 3C  Reprisal Complaints ..................................................................................................................... 74
    3.15.  Key Terms ..................................................................................................................................... 74
    3.16.  Right for Whistleblower Protection Against Reprisal Under Title 10, United States
    Code, Section 1034 (10 U.S.C. 1034)....................................................................................................... 75
    3.17.  Policy for Receipt of Reprisal Complaints................................................................................... 75
Figure 3.1.  Reprisal Rights Advisement ......................................................................................................... 77
    3.18.  Notification Requirements for Reprisal Complaints.................................................................... 77
Figure 3.2.  Notification of Allegations of Reprisal Protected under 10 U.S.C. 1034................................... 78
    3.19.  Conducting a Complaint Analysis on Allegations of Reprisal .................................................... 78
    3.20.  Investigating Reprisal Complaints................................................................................................ 79
    3.21.  Acid Test for Reprisal ................................................................................................................... 80
Figure 3.3.  Format for Acid Test for Reprisal ................................................................................................ 81
    3.22.  Reprisal Evaluation Form.............................................................................................................. 82
    3.23.  Reviewing and Approving Reprisal Investigations ..................................................................... 82
    3.24.  Responding to Complainants ........................................................................................................ 82
Section 3D  Improper Mental Health Evaluation Complaints......................................................................... 83
    3.25.  Key Terms ..................................................................................................................................... 83
    3.26.  Protections Regarding Involuntary MHE for Air Force Members ............................................. 83
    3.27.  Report of Improper Involuntary Admissions............................................................................... 83
    3.28.  Receiving Improper MHE Referral Complaints.......................................................................... 83
    3.29.  Notification Requirements for Improper MHE Referral Complaints......................................... 84
Figure 3.4.  Notification of Allegations of Improper MHE Referral ............................................................. 85
    3.30.  Conducting and Closing an Improper MHE Referral Complaint ............................................... 85
    3.31.  Mental Health Referral Evaluation Checklist.............................................................................. 86
Section 3E  Congressional Taskings................................................................................................................. 86
    3.32.  Sources for Congressional Taskings............................................................................................. 86
    3.33.  Investigative Procedures ............................................................................................................... 86
    3.34.  Closing a Congressional Complaint ............................................................................................. 86
Section 3F  Military EOT Complaints.............................................................................................................. 87
    3.35.  Key Terms ..................................................................................................................................... 87
    3.36.  Policy Regarding Processing of Military EOT Complaints ....................................................... 87
    3.37.  Military Sexual Harassment Complaints ..................................................................................... 87
Section 3G  Managing the Air Force FWA Program ...................................................................................... 89
    3.38.  Governing Directives..................................................................................................................... 89
    3.39.  Key Terms ..................................................................................................................................... 89
    3.40.  IG Responsibilities ........................................................................................................................ 89
    3.41.  MAJCOM, FOA, DRU Responsibilities ..................................................................................... 89
    3.42.  Installation IG's Responsibilities.................................................................................................. 90

| | |
|---|---|
| Section 3H  Managing Defense Hotline Complaints | 90 |
|    3.43. Governing Directives | 90 |
|    3.44. Key Terms | 90 |
|    3.45. SAF/IGQ Responsibilities | 90 |
|    3.46. MAJCOM, FOA, DRU Responsibilities | 91 |
|    3.47. Investigating a Defense Hotline Complaint | 91 |
|    3.48. Closing a Defense Hotline Complaint | 92 |
| Figure 3.5. HCR Format | 93 |
|    3.49. Referring Defense Hotline Complaints to Other Investigative Agencies | 94 |
| **Chapter 4 – IG RECORDS RELEASE** | **95** |
| Section 4A  Overview | 95 |
|    4.1. In this Chapter | 95 |
|    4.2. Key Terms | 95 |
| Section 4B  Official Use Requests | 95 |
|    4.3. Release Authority for OURs | 95 |
|    4.4. Policy Regarding OURs | 95 |
|    4.5. Commanders and OUR | 96 |
| Figure 4.1. Sample OUR from Commander | 96 |
| Figure 4.2. OUR Release Memorandum | 97 |
|    4.6. Restrictions for Use of IG Records | 98 |
| Section 4C  Discovery Requests | 99 |
|    4.7. Release Authority for Discovery Requests | 99 |
|    4.8. Policy Regarding Discovery Requests | 99 |
| Section 4D  FOIA/Privacy Act Requests | 99 |
|    4.9. Release Authority for FOIA/PA Requests | 99 |
|    4.10. Policy Regarding FOIA/PA Requests | 99 |
|    4.11. Specific Protections under the FOIA | 100 |
|    4.12. Maintenance of FOIA Records | 100 |
| Section 4E  Requests from Non-Air Force Agencies | 100 |
|    4.13. Official Use Requests from IG, DoD | 101 |
|    4.14. Requests from Other Government Agencies | 101 |
|    4.15. Requests from Congress | 101 |
| ATTACHMENT 1—Glossary of References and Supporting Information | 102 |
| ATTACHMENT 2—Format for Reprisal Evaluation Form | 114 |
| ATTACHMENT 3—Format for Mental Health Referral Evaluation Form | 117 |
| ATTACHMENT 4—Sample Complaint Analysis for Allegations of Reprisal | 122 |
| ATTACHMENT 5—Text of IC 99-1 | 125 |

*AFI 90-301   12 AUGUST 1999*                                                                                                                79

3.19.2. Before conducting a complaint analysis, the IG must find out if the allegations which constituted the *protected disclosure* were properly addressed.

    3.19.2.1. If the allegations were properly addressed, IGs should attempt to obtain a copy of the applicable documents from the appropriate agency to assist them during complaint analysis.

    3.19.2.2. If the allegations were not properly addressed, then the IG should refer the matter to the appropriate agency for action, or conduct a complaint analysis on the allegations to determine the need for further IG action.

3.19.3. Complaint analysis will be conducted following the procedures specified in Section 2C of this instruction and this paragraph. Analysis of reprisal allegations must also focus on the first three questions of the Acid Test for Reprisal (see Figure 3.3).

    3.19.3.1. If complaint analysis determines that a reprisal investigation **is** warranted, then the investigation should be promptly conducted. No further notification to SAF/IGQ or IG, DoD is required prior to forwarding the finalized investigation or required PRs.

    3.19.3.2. If complaint analysis determines that a reprisal investigation is **not** warranted, the IG conducting the complaint analysis must forward the results of the analysis to SAF/IGQ through the MAJCOM, FOA, DRU IG office. IGs may provide an interim response to complainants informing them that the complaint analysis was forwarded to IG, DoD for final determination.

        3.19.3.2.1. SAF/IGQ will forward the complaint analysis to IG, DoD for review.

        3.19.3.2.2. If IG, DoD agrees with the Air Force's determination, they will notify SAF/IGQ who will in turn notify the MAJCOM, FOA, DRU. It is the responsibility of the MAJCOM, FOA, DRU IG to notify the complainant that there is insufficient evidence to conduct a reprisal investigation under 10 U.S.C. 1034.

        3.19.3.2.3. If IG, DoD disagrees with the Air Force's determination, they may retain the complaint for investigation or task SAF/IGQ to conduct an investigation. SAF/IGQ will normally delegate the investigation down to the lowest-level IG office through the MAJCOM, FOA, DRU IG.

    3.19.3.3. If the allegations **do not** meet the test for reprisal, but the complaint analysis identified the **need** for an IG investigation, then treat the allegations as a personal complaint and process it accordingly.

3.19.4. If the complainant files concurrent complaints with an Air Force IG and IG, DoD, the IG, DoD will conduct the complaint clarification. IG, DoD may task the Air Force to conduct an investigation, if appropriate.

**3.20. Investigating Reprisal Complaints.** Reprisal investigations will be conducted IAW DoDD 7050.6 and this instruction.

    3.20.1. If IG, DoD receives a reprisal complaint directly from a complainant, then IG, DoD will conduct the complaint analysis and forward the analysis with the tasking letter to SAF/IGQ for investigation. SAF/IGQ will forward the package to the MAJCOM, FOA, DRU IG for proper handling of the complaint.

    ★3.20.2. If an investigation into allegations of reprisal is warranted, you **must** conduct a Category II investigation.

    3.20.3. IAW 10 U.S.C 1034, MAJCOM, FOA, DRU IGs must provide a PR to OSD and IG, DoD (through SAF/IGQ), **and** an interim response to the complainant if the investigation is not completed within 180 days after receipt of the allegations. The letters must include the reasons for the delay and an estimated time of completion for the investigation. Refer to paragraphs 2.28 and 2.29 for proper format. IGs must also comply with Air Force requirements for PRs and IRs as specified in paragraphs 2.28 and 2.29 of this instruction.

3.20.4.  The final ROI must identify all protected disclosures, all personnel actions alleged to be acts of reprisal taken after the protected disclosure was made, and all responsible management officials.

3.20.5.  The final ROI must contain an Acid Test for Reprisal with all four questions answered for **each** allegation of reprisal.  Refer to paragraph 3.21.

★3.20.6.  Final case file (Figure 2.3) must contain a chronology of events beginning at least with the complainant's **initial** protected disclosure.

3.20.7.  When a complainant alleges both reprisal and improper MHE referral within the same complaint, IGs must ensure the reporting requirements for both reprisal and MHE are completed.

> 3.20.7.1.  Ensure the IO investigates both the reprisal allegation(s) and whether the complainant was properly referred for an MHE.
>
> 3.20.7.2.  If, upon clarification, it is clear that the MHE referral was done properly, this finding must be included in the ROI and the allegation(s) of reprisal must still be investigated.

3.20.8.  All reprisal investigations containing allegations against colonels and below **must** have at least two legal reviews and one **must** be done at MAJCOM, FOA, DRU level.  **EXCEPTION:** For ANG cases: one legal review will be done at the State level and SAF/IGQ will obtain the second.

3.20.9.  SROIs are not required for reprisal investigations.

**3.21.  Acid Test for Reprisal.**  The "Acid Test" is a four-part process, which aids the IO and reviewing officials in determining if reprisal occurred and should be incorporated into Tab C of the final ROI. Figure 3.3 describes the requirements for the acid test.

★Figure 3.3. **Format for Acid Test for Reprisal.**

| 1q. Did the military member make or prepare a disclosure protected by statute or DoD Directive (to an IG, Member of Congress, or a member of a DoD audit, inspection, investigation, or law enforcement organization) or by Air Force directives (disclosure to a member of an IG office investigative staff, Military Equal Opportunity personnel, Family Advocacy, or to designated individuals of a member's chain of command)? |
|---|
| 1a. Answer Yes or No. *[Providing details including the dates of protected communication; who the member made the protected disclosure to; and what the protected disclosure concerned.]* |
| **SEE NOTE 1** |
| 2q. Was an unfavorable personnel action taken or threatened; or was a favorable action withheld or threatened to be withheld following the protected disclosure? |
| 2a. Answer Yes or No. *[Provide an explanation of what was the unfavorable or withheld favorable personnel action, or threat thereof, taken or withheld. Also detail which officials were responsible for which particular action.]* |
| 3q. Did the official(s) responsible for taking, withholding, or threatening the personnel action know about the protected communication? |
| 3a. Answer Yes or No. *[Briefly state supporting facts, evidence, and testimony. It is important to state when each official responsible for the adverse action became knowledgeable. Give specific dates whenever possible. If an exact date is unknown, state "on or about" what date or time frame. Do not make general statements such as "Everyone knew that the complainant talked with the IG."]* |
| **SEE NOTE 2** |
| 4q. Does the preponderance of evidence establish that the personnel action would have been taken, withheld, or threatened if the protected disclosure had not been made? |
| 4a. Answer Yes or No. *[Be specific and explain logic and rationale. Establish whether there is a genuine connection between the adverse personnel action and the protected communication.]:* |
| *** *When answering the fourth question, the following five (5) related questions regarding the personnel action must be addressed in the analysis as separate subheadings: (1)* **Reasons** *stated by the responsible official for taking, withholding, or threatening the action; (2)* **Reasonableness** *of the action taken, withheld, or threatened considering the complainant's performance and conduct; (3)* **Consistency** *of the actions of responsible management officials with past practice; (4)* **Motive** *of the responsible management official for deciding, taking, or withholding the personnel action; (5)* **Procedural correctness** *of the action. This will allow the IO to determine explicitly whether or not the adverse action was: (a) reprisal (in the case where answers to the first three questions are "yes"); or (b) an "abuse of authority" (in the case where the answer to either the first or third question is "no").* |
| **SEE NOTE 3** |

NOTE 1:   If there are no *protected disclosures*, then reprisal cannot be substantiated. If there is a question about whether or not a confirmed communication is a "protected" disclosure, the IO should enter a "Finding"; even if the IO finds the communication wasn't "protected," he or she should nonetheless proceed with the Acid Test as if it were. In those cases where complainants allege an action was taken in "reprisal" for a communication not protected by statute, DoD or Air Force Directive, the investigation is not over. The IO should determine whether or not the adverse action was otherwise an "abuse of authority."

★ NOTE 2:   If the official responsible for taking, withholding, or threatening the personnel action *did not know* about the protected communication, then reprisal cannot be substantiated. However, the IO should nonetheless proceed with the Acid Test to determine whether or not the adverse personnel action was otherwise an "abuse of authority."

★ NOTE 3:   If the answer to the first three questions is "yes" and the answer to the fourth question is "no," then reprisal generally has occurred. As with any investigation, especially those alleging reprisal, consult your Staff Judge Advocate.