

**INSPECTOR GENERAL**
**DEPARTMENT OF DEFENSE**
**400 ARMY NAVY DRIVE**
**ARLINGTON, VIRGINIA 22202-4704**

February 6, 1996

**INSPECTOR GENERAL GUIDE 7050.6**

## GUIDE TO INVESTIGATING REPRISAL AND IMPROPER REFERRALS FOR MENTAL HEALTH EVALUATIONS

### FOREWORD

This Guide explains how to investigate allegations of reprisal and improper referrals for mental health evaluations. It is designed to logically lead investigators from the initial allegation, to documentation and analysis of the evidence, to the conclusion of whether reprisal or other improper action occurred. The Guide also explains how to determine whether the legal requirements have been met in referrals for mental health evaluations.

The Guide incorporates the statutory changes made to Section 1034 of Title 10, United States Code, by the Fiscal Year 1995 National Defense Authorization Act, and DoD Directive 7050.6, "Military Whistleblower Protection," August 12, 1995. It also addresses the rights and procedures outlined in DoD Directive 6490.1, "Mental Health Evaluations of Members of the Armed Forces," September 14, 1993.

This Guide supersedes IGDG 7050.6, dated September 30, 1992. Local duplication is authorized. Should you desire additional copies of this guide or have questions, comments, or recommended changes, call or write to:

Director
Office of Departmental Inquiries
Office of Inspector General, Department of Defense
400 Army Navy Drive
Arlington, Virginia 22202-2884
(703) 604-8507 or DSN 664-8507

/Signed/
Eleanor Hill
Inspector General

# TABLE OF CONTENTS

Page

## CHAPTER 1 - OVERVIEW

1.1.  Purpose.................................................................................................3
1.2.  Background............................................................................................3

## CHAPTER 2 - INVESTIGATION OF MILITARY WHISTLEBLOWER REPRISAL

2.1.  Beginning the Investigation ...............................................................4
2.2.  During the Investigation .....................................................................5
2.3.  Protected Communications .................................................................5
2.4.  Personnel Actions ...............................................................................7
2.5.  Knowledge By Responsible Management Officials ...........................9
2.6.  Reprisal Or Independent Basis For Personnel Actions ....................10
2.7.  Completing the Investigation ...........................................................14
2.8.  Review of the Evidence ...................................................................14
2.9.  Analysis and Report Writing ...........................................................14
2.10. Summary ..........................................................................................16
2.11. Definitions........................................................................................16

## CHAPTER 3 - INVESTIGATION OF IMPROPER REFERRAL
## FOR MENTAL HEALTH EVALUATION

3.1.  When to Use this Chapter .................................................................19
3.2.  Investigation Checklist......................................................................19
3.3.  Recommendations..............................................................................19
3.4.  Definitions .........................................................................................19

## CHAPTER 4 - REPORTING REQUIREMENTS

4.1.  Military Reprisal Cases.....................................................................24
4.2.  Mental Health Referral Cases ..........................................................24

## APPENDICES

A.  DoD Directive 7050.6 .........................................................25
B.  DoD Directive 6490.1 .........................................................34
C.  Sample Report of Investigation .........................................44

## FIGURES

2.1.  Military Whistleblower Reprisal Investigation Review Criteria Worksheet ....................17
3.1.  Mental Health Referral Investigation Checklist................................................................20

# CHAPTER 1
# OVERVIEW

**1.1.  Purpose.**  This Guide is solely an aid to assist personnel appointed to investigate allegations of reprisal and improper referrals for mental health evaluations.  It does not create any right, privilege, or benefit not established in law or regulation.

**1.2.  Background**

a.        Section 1034 of Title 10, United States Code (10 U.S.C. 1034), requires an expeditious investigation of all allegations of reprisal for whistleblowing submitted by military members.  DoD Directive 7050.6, "Military Whistleblower Protection," implements 10 U.S.C. 1034 (see Appendix A).

(1)  DoD Directive 7050.6 prohibits:

(a)    Restricting a military member from making a protected communication to a Member of Congress; an Inspector General (IG) of a DoD Component; a member of a DoD audit, inspection, investigation or law enforcement organization; or any other person or organization (including any person or organization in the chain of command) designated under component regulations or other established administrative procedures to receive such communications; and,

(b)    Taking (or threatening to take) an unfavorable personnel action or withholding (or threatening to withhold) a favorable personnel action as reprisal for making or preparing a protected communication to a Member of Congress; an IG of a DoD Component; a member of a DoD audit, inspection, investigation or law enforcement organization; or any other person or organization (including any other person or organization in the chain of command) designated under component regulations or other established administrative procedures to receive such communications.

(2)  Substantiated reprisal by a military member is punishable under Article 92 of the Uniform Code of Military Justice, "Failure to Obey Order or Regulation." Substantiated reprisal by civilian employees is punishable under DoD regulations governing disciplinary or adverse actions.

b.  The National Defense Authorization Act for Fiscal Year 1993 (Public Law 102-484), established certain requirements for command-directed mental health evaluations. DoD Directive 6490.1, "Mental Health Evaluations of Members of the Armed Forces," implements the Public Law (see Appendix B). DoD Directive 6490.1:

(1)  Establishes the rights of members referred by their commands for mental health evaluations.

(2)  Establishes procedures for outpatient and inpatient mental health evaluations that provide protection to members referred by their commands for such evaluations.

(3)  Prohibits the use of command referrals for mental health evaluations in reprisal against military members who make a protected communication protected by statute or directive; and

(4)  Incorporates guidelines on psychiatric hospitalization of adults prepared by professional civilian health organizations.

# CHAPTER 2
## INVESTIGATING MILITARY WHISTLEBLOWER REPRISAL

**2.1. <u>Beginning the Investigation</u>.** Contact the complainant as soon as possible, even if only to tell him/her who will be conducting the investigation. Also, as soon as possible, determine what action has been taken on the initial protected communication or disclosure of wrongdoing (for more information regarding investigation of the initial protected communication, see Appendix A, DoD Directive 7050.6, paragraphs E.l.g. and h.). Generally, do not combine the investigation of the protected communication of alleged wrongdoing with the investigation of the reprisal allegations. The issue of reprisal is a stand-alone challenge!

The challenge comes in obtaining the evidence needed to answer four central questions:

  1.  Did the military member make or prepare a communication protected by statute?

  2.  Was an unfavorable personnel action taken or threatened, or was a favorable action withheld or threatened to be withheld following the protected communication?

  3.  Did the officials) responsible for taking, withholding, or threatening the personnel action know about the protected communication?

  4.  Does the evidence establish that the personnel action would have been taken, withheld, or threatened if the protected communication had not been made?

The first three questions are relatively straightforward and easy to resolve so long as you properly identify all the protected communications, personnel actions, and responsible management officials who either took or influenced the personnel actions. That's why it's so important to first become familiar with the definitions provided in this guide and the appendices.

The fourth question is different from the first three because it asks "Why?" Why did the responsible management officials act as they did? In other administrative investigations, once you establish that management acted within applicable guidelines and had the authority to act as they did, you would consider your task accomplished and the case closed. However, in reprisal investigations, you must go one step further. You must ask "why" management officials acted as they did. Finding the answers to the fourth question, then, is your most difficult task because you must analyze not only the actions of management officials, but their motives as well.

Before beginning any interviews, read this entire chapter. Pay particular attention to Sections 2.3 through 2.6. Those Sections identify the evidence requirements and the analytical framework for each of the four questions listed above. Also, take a quick look at DoD Directive 7050.6, Enclosure 1, "Content of Complaint" (Appendix A). Although intended for the complainant, you may find it helpful as a recap of the information you will need as well.

Plan and prepare for the investigation ahead of time. Thorough planning will ensure that when you begin your interviews you will get the information you need to answer the four questions. Also research the pertinent laws, rules and regulations that apply to the personnel actions under review and obtain as many of the relevant documents as possible.

Make every effort to identify and interview all key witnesses--nonavailability due to temporary duty, leave, or separation from the service is not sufficient justification for not interviewing a key witness. Ask for the assistance of command or higher headquarters to locate individuals and arrange for interviews by telephone or in person.

Before you begin, review Figure 2.1, "Military Whistleblower Reprisal Investigation Review Criteria Worksheet." **This is your checklist.** It's also the checklist that your appointing authority, staff judge advocate, or other reviewing authority may use to ensure that you adequately investigated the allegations.

One final reminder: **"Investigate the complaint, not the complainant!"** Investigators sometimes have a tendency to examine the reputation, background, or performance of the complainant in order to determine the credibility of the complainant's claim. Avoid this approach--instead, focus on the facts and circumstances related to the issue of reprisal, not the character or reputation of the complainant.

**2.2.    During the Investigation.**  When possible, interview the complainant first.  Ensure that you understand and clarify the issues as described by the complainant.  Ask the complainant to identify witnesses who have relevant information regarding the allegations.  After collecting the evidence and interviewing all the witnesses, you may need to re-interview the complainant or other witnesses to resolve conflicting evidence or to clarify information.

**Develop a detailed chronology.**  Begin developing and updating a working chronology as you proceed with the investigation.  Detail as much of the "who, what, and when" of events leading up to each protected communication and each personnel action taken, withheld, or threatened.  You will have an opportunity to update the chronology during the review and analysis phases of the investigation to ensure the accuracy of each entry (see Sections 2.8 and 2.9).

While you are not investigating the complainant, it is helpful to include in the chronology a very brief description of past ratings of the complainant's performance before the protected communications, and what evidence there may be of any documented favorable or unfavorable counseling or personnel actions that preceded the protected communication(s).  A well-developed chronology will prove to be an excellent tool to analyze the facts and circumstances surrounding each personnel action and to establish any "nexus" or connection between the protected communications and the personnel actions.

The following sections provide the analytical framework for each of the four questions you must answer.

**2.3    Protected Communications**

---

**QUESTION 1.  Did the military member make or prepare a communication protected by statute?**

---

First, review the definition. A protected communication is:

    *a.  Any lawful communication to a Member of Congress or an IG.*

    *b.  A communication in which a member of the Armed Forces communicates information that the member reasonably believes evidences a violation of law or regulation, including sexual harassment or unlawful discrimination, mismanagement, a gross waste of funds or other resources, an abuse of authority, or a substantial and specific danger to public health or safety, WHEN such communication is made to any of the following:*

        *(1)  A Member of Congress, an IG, or a member of a DoD audit, inspection, investigation, or law enforcement organization.*

        *(2)  Any other person or organization (including any person or organization in the chain of command) designated under Component regulations or other established administrative procedures to receive such communications.*

Please note that a communication made to a Member of Congress or an IG **does not necessarily have to disclose information that evidences wrongdoing, it simply has to be a lawful communication.** If the complainant contacted a Member of Congress or an IG, but did not disclose any specific wrongdoing, treat the contact as a protected communication and proceed with the investigation.

Also note that communications made by a third party, e.g., spouse, relative, or co-worker of the military member, to an Inspector General, a Member of Congress, or another designated official may be covered as protected communications under 10 U.S.C. 1034. The test is whether the management official who took the personnel action believed or suspected that the protected communication was made **by or on behalf of the military member**.

Remember that complaints to the chain of command may include, but are not limited to those presented during Request Mast or Commander's Office Hours and Open Door policies. Also, participation as a witness during an official investigation may also qualify as a protected communication.

**To determine whether the complainant made or prepared a protected communication, obtain appropriate documents and/or witness testimony to show:**

  ◆   Whether the military member communicated, was preparing to communicate, or was believed to have communicated with an appropriate official listed in the definition of a protected communication,

  ◆   All applicable dates and persons with knowledge of the communication, e.g., the date the complainant first expressed an intent to make or prepare a protected communication and to whom such an intent was expressed; the date of any rumors attributing a protected communication to the complainant and the source of such rumors; the date of any actual submission of a protected disclosure and to whom the complaint was made or prepared, and

  ◆   Whether the communication concerned information the military member reasonably believed evidenced a violation of law or regulation, including sexual harassment or unlawful discrimination, mismanagement, a gross waste of funds or other resources, an abuse of authority, or a substantial and specific danger to public health or safety *(not required if the communication was to a Member of Congress or an IG)*.

The complainant may furnish documentation to show he or she made or prepared a protected communication. If the documentation clearly establishes that a protected communication was made, proceed to the next question. However, if the documentation is insufficient, contact the appropriate official to whom the protected communication was made, and obtain any testimony or documents necessary to show whether a protected communication was made.

In the event the complainant prepared, but did not send or deliver a protected communication to the intended official or agency, obtain as much evidence as possible to establish that the complainant prepared or intended to make a protected communication. The complainant may have expressed the intent to make a protected communication to a supervisor, commander, or co-worker.

**Remember**--the military member may have made or prepared more than one protected communication. Make sure you properly identify and consider all protected communications.

**"What if there was no protected communication?"**

If you find that the complainant did not make or prepare a protected communication, you may be tempted to end the investigation at this point. However, keep in mind that even if the complainant did not make or prepare a protected communication, but was believed to have done so, you must proceed with the investigation. You cannot determine whether any responsible management officials suspected, believed,

or heard rumors that the complainant made or prepared a protected communication until you interview them or other key witnesses.

If you are unable to establish with certainty that the complainant made or prepared a protected communication, give the whistleblower the benefit of the doubt and proceed with the investigation.

**"What if the allegations of wrongdoing in the complainant's initial protected communication are not substantiated?"**

It makes no difference whether the initial allegations of wrongdoing are substantiated or unsubstantiated. The law only requires that the complainant disclose information of alleged wrongdoing that he or she "reasonably believes" evidences wrongdoing. Generally, we accept that the complainant really does believe that the information he or she provided evidences wrongdoing.

**"What if I find that the complainant intentionally made false statements or misrepresented the truth in the protected communication or disclosure of wrongdoing?"**

Whistleblower protection "protects" complainants from threats or acts of reprisal--it does not protect or otherwise insulate complainants from facing the consequences of their own misconduct. On rare occasions, you may come across an assertion by a third party that the whistleblower knew or should have known that the information provided in the initial protected communication was not true. If that is the case, you must resolve the issue of "reasonable belief. " If you find that the complainant either made false statements or intentionally misrepresented the truth regarding the reported wrongdoing, then you may refer the matter for appropriate command action and close the reprisal investigation.

**"What if I find that the complainant reported the initial wrongdoing, not out of a sense of duty or regulatory requirement, but was motivated to report the wrongdoing in retaliation against the chain of command or other official?"**

When investigating an allegation of reprisal, consider only the motives of management for taking or withholding a personnel action. The complainant's motivation for making or preparing a protected communication is not at issue.

## 2.4. <u>Personnel Actions</u>

> **QUESTION 2.** *Was an unfavorable personnel action taken or threatened, or was a favorable action withheld or threatened to be withheld following the protected communication?*

First, review the definition. A personnel action is:

*Any action taken on a member of the Armed Forces that affects or has the potential to affect that member's current position or career. Such actions include a promotion; a disciplinary or other corrective action; a transfer or reassignment; a performance evaluation; a decision on pay, benefits, awards, or training; referral for a mental health evaluation under DoD Directive 6490.1; and any other significant change in duties or responsibilities inconsistent with the military member's rank.*

**Next,** interview the complainant. At this point in the investigation, all you need to do is identify:

◆ All of the personnel actions that the complainant alleges were in reprisal,

◆   All of the management officials that the complainant believes to be responsible for the personnel actions. (Note: The complainant may not be aware of all officials involved in a particular personnel action.)

◆   The date(s) of the actions or the date(s) the complainant believes the responsible management officials decided to take the actions (if known at this point), and

◆   Whether the dates of the actions or decisions occurred **before** or **after** the dates of the protected communications.

**Remember--don't jump ahead.**  Do not begin to analyze the reasons for the personnel actions until you reach the fourth question.

**Then,** obtain copies of any documentation of the personnel action(s) from the complainant or the personnel office.  Review the documentation and testimony to verify:

◆   What personnel action(s) occurred or were withheld or threatened.

◆   The management officials responsible for the action(s) or threat(s) (including any officials who recommended, approved, or influenced the decision).

◆   The date the responsible management official **first contemplated taking** the action or decided to take, withhold, or threaten the personnel action.

◆   The date the action(s) were **actually taken**, withheld, or threatened.

◆   What happened.  Obtain as much information as you can about the personnel action(s) or threat(s) and the circumstances that led to the decision to take, withhold, or threaten the personnel action(s).

**"What if I can't ascertain the date the management official *decided* to take, withhold, or threaten the personnel action?"**

If you establish that a personnel action was taken but cannot ascertain the date the responsible management official decided to take the action, review the complainant's official personnel file and any other pertinent files available in the local personnel office.  You may want to interview the personnel officer or others in the personnel office who would normally be involved in processing the alleged action(s).  Secure copies of regulations applicable to any personnel actions from the personnel office.

**"What if there was no personnel action?"**

The definition of a personnel action is very broad; however, not every action cited by a complainant is considered to be a "personnel action" even if it does affect or will affect the complainant's career.  One such action is the "initiation" of an investigation.  Complainants may allege that an investigation of their conduct was initiated in reprisal for their whistleblowing activity.  While we do not consider the initiation of an investigation to be a "personnel" action, any personnel actions taken as the result of an investigation must be considered if they occurred after the complainant made or prepared a protected communication.

If you cannot identify a personnel action that meets the definition and can find no evidence of a threat of such an action, then you may stop the investigation at this point.

## 2.5.  Knowledge By Responsible Management Officials

> **QUESTION 3.** *Did the official(s) responsible for taking, withholding, or threatening the personnel action know about the protected communication(s)?*

Who are the responsible management officials?  The responsible management official(s) are:

◆ The officials) who influenced or recommended to the deciding official that he/she take, withhold, or threaten the action,

◆ The official(s) who decided to take, withhold, or threaten the personnel action, and

◆ Any other official(s) who approved, reviewed, or endorsed the action.

You must determine and identify who was responsible for each personnel action or threat and whether the responsible officials) knew, suspected, believed, or heard rumors about the complainant's protected communication(s) when they decided to take, withhold, or threaten the personnel action.

In the case of multiple protected communications, it is important to identify and list each one in the chronology.  When you get to the third question, you may find, for example, that the responsible management official knew that the complainant filed an Article 138, Complaint of Wrongs, but was unaware that the complainant also made a protected communication to a Member of Congress or an IG.

**Ask the military member:**

◆ *Who do you believe is responsible for the personnel action(s)?*

◆ *Why do you believe the responsible official(s) knew that you made or prepared a protected communications before they took the action or made the threat?*

◆ *Who did you tell about making or preparing a protected communication?*

◆ *Who can testify (or provide documents) to show the responsible official(s) were aware of the protected communication?*

**Ask each responsible management official:**

◆ *When and how did you first become aware that the complainant made or prepared a protected communication?*

◆ *When and how did you first suspect or come to believe that the complainant made or prepared a protected communication?*

**Ask other witnesses, particularly those cited by the complainant** (IGs, first sergeants, supervisors, co-workers, executive officers, chiefs of staff, personnel officers, attorneys and secretaries frequently have information regarding this issue):

◆ *What do you know about the complainant's protected communication and when did you find out?*

◆ *Did you tell anyone else about the protected communication? If so, when and who?*

◆ *What information do you have that leads you to believe the responsible management officials knew or did not know about the protected communication before they decided or took the personnel action(s)?*

◆ *Who else do you believe may have information that supports whether the responsible management officials knew about the protected communication and when they may have learned about the protected communication?*

**"What if the responsible management official denies having any knowledge of the protected communication until after he or she decided to take or took the personnel action?"**

If the responsible officials) deny knowledge of the protected communication prior to the action or threat, obtain testimony and documents to determine if the denial is credible. Remember that suspicion, belief, or knowledge of rumors of a protected communication by a responsible management official is sufficient to proceed with the investigation. In the case of suspicion, belief, or rumor, the responsible management officials need not have specific knowledge of an actual protected communication.

**"What if the responsible management officials did not know about or suspect that the complainant made or prepared a protected communication?"**

If any one of the responsible management officials knew or suspected that the complainant made or prepared the protected communication before the action was taken, withheld or threatened, then the investigation must continue. If there is no evidence that any responsible management official who recommended, took, or approved the personnel action knew or suspected that the complainant made or prepared a protected communication before deciding to take or taking the action, then you may terminate the investigation. If the evidence is insufficient to determine who knew what and when, give the benefit of the doubt to the complainant and proceed with the investigation.

**Remember**--knowledge of the protected communication does not, by itself, substantiate reprisal!

## 2.6.   Reprisal Or Independent Basis For Personnel Actions

> **QUESTION 4.** *Does the evidence establish that the personnel action would have been taken, withheld, or threatened if the protected communication had not been made?*

In other words, *"Would the complainant be in the same position today if he or she had not made or prepared a protected communication?"*

**The complainant** must establish that he or she made or prepared a protected communication and thereafter suffered a personnel action. **The responsible management officials** must establish that they would have decided, taken, or withheld the same personnel action(s) even if the complainant had not made or prepared a protected communication.

**"What evidence to I need?"** There are five variables to consider regarding the personnel actions: **Reasons, Reasonableness, Consistency, Motive, and Procedural Correctness.**

Obtain all the evidence necessary to decide whether the personnel action would have been taken, withheld, or threatened if the complainant had not made or prepared the protected communication. In gathering the evidence, ensure that you obtain documentation or testimony to determine the following:

◆ **Reason(s)** stated by the responsible official(s) for taking, withholding, or threatening the action.

◆ **Reasonableness** of the action(s) taken, withheld, or threatened considering the complainant's performance and conduct.

◆ **Consistency** of the actions of responsible management officials with past practice. How did the responsible management officials respond in the past under similar circumstances involving other personnel? Are their actions in the case of the complainant consistent with past actions, or did they handle the matter differently? If the responsible management officials deviated from the way they normally acted in the past, you must explain the difference and determine whether the reasons are credible under the circumstances.

◆ **Motive** of the responsible management officials) for deciding, taking, or withholding the personnel action. In other words, **"Did the responsible management official take the right action for the right reason?"** Was the motive to maintain good order and discipline or was it reprisal? What bearing, if any, did the protected communication have on the decision to take or withhold the personnel action? Did the complainant's protected communication allege any wrongdoing by any of the responsible management officials or otherwise implicate or criticize their performance, integrity, competence, or leadership?

◆ **Procedural correctness** of the action. Did the responsible management officials comply with established policy and procedures for the personnel action(s)? Did any of the responsible management officials exceed their authority or fail to obtain proper approval or legal guidance before taking the action.

*[Make a note to come back and review the five variables outlined above when you reach Section 2.9, Analysis and Report Writing.]*

Once you establish that the responsible management officials had the authority to act as they did, you may be tempted to close the investigation. However, to completely investigate an allegation of reprisal, you must address all of the above issues. The concept of management prerogative is a strong one in military and business circles. There is nothing in military reprisal law or regulation that attempts to limit management prerogatives. However, if management abuses their authority by taking an action in reprisal for whistleblowing, then management is wrong, and the action taken must be corrected. For example, issuing an evaluation report is a management prerogative. Issuing an adverse evaluation report on a military member based solely on his or her national origin or race is illegal. Issuing an adverse evaluation report on a military member based on his or her status as a whistleblower, i.e., because he or she made a protected communication, is also illegal.

**To answer the 4th question,** you must, at a minimum, interview the complainant, the officials responsible for each personnel action, and key witnesses who have knowledge of the matters at issue. You must also review all available documentation of the personnel action(s) and/or threat(s).

**Ask pointed interview questions that will:**

◆ confirm or rebut the testimony of the complainant or responsible management official(s);

◆ expose inconsistencies and contradictions between what a witness tells you and what you otherwise know to be true based on the evidence, e.g., documents pertaining to the personnel actions, credible witness testimony, regulatory requirements; and,

IGDG 7050.6

◆ reveal whether the actions of the responsible management officials were consistent with past practice, e.g., like reward for like achievement, like penalties for like offenses.

**Ask the military member:** (These questions will help establish the complainant's side of the story regarding the circumstances that caused the personnel action to be taken, withheld, or threatened.)

◆ *What reasons, if any, did any of the responsible management officials give you for taking or withholding the personnel action(s)?*

◆ *Why do you believe the action was in reprisal and not for the reasons given?*

◆ *Did any of the responsible management officials ever mention your protected communications in discussions about the personnel actions?*

◆ *Did anyone tell you that they overheard any of the responsible management officials discussing your protected communications? If so, who, and when?*

◆ *Who else could provide information to verify your testimony or clarify the reasons for the personnel action(s)?*

◆ *Do you have any documents or other evidence to show or explain why the action was improper or unjustified?*

◆ *Do you have any evidence that you were treated differently from others in similar circumstances? (If so, obtain as much information as possible to verify whether the complainant's belief has merit?)*

**Ask all individuals who influenced or made recommendations about the action or threats, including members of centralized boards or panels (as applicable):**

◆ *What actions did you recommend?*

◆ *Why did you make the recommendation? (Get the specific reason(s) and any supporting documentation for the recommendation?) Ask who, what, where, when, why and how for the reason(s) supporting the recommendation.)*

◆ *What influence, if any, did the complainant's protected communications have on your decision to recommend or approve the personnel actions?*

◆ *Would you have taken the same actions if the complainant had not made or prepared a protected communication?*

◆ *Do you believe your actions in this case are consistent with how you've acted under similar circumstances? Did you treat the complainant any differently in this case?*

◆ *What was your reaction when you learned that the complainant had made a protected communication? What did you think? How did you feel?*

**Ask the responsible management official(s) who decided to take, withhold, or threaten each personnel action:** (These questions will help establish management's reasons for taking, withholding, or threatening the personnel action.)

IGDG 7050.6

◆ *Why did you take the personnel action or make the threat? (Get the speck reason(s) and copies of any supporting documentation. Ask who, what, where, when, why and how for each reason given.)*

◆ *What authority did you have to take or withhold the personnel action? What policy, rule, or regulation gave you the authority?*

◆ *Did anyone recommend that you take or withhold the personnel action? If so, who and on what were the reasons given for the recommendation? (Get any supporting documentation of any recommendation(s) made. Ask who, what, when, why and how for the recommendation[s].)*

◆ *What influence, if any, did the complainant's protected communications have on your decision to take or withhold the personnel actions?*

◆ *Would you have taken the same actions if the complainant had not made or prepared a protected communication?*

**Ask other witnesses, including those suggested by the complainant, and witnesses who might logically have such information, (such as co-workers, other supervisory personnel involved, first sergeants, the executive officer, chief of staff, or other person in a position to influence the responsible management officials on personnel matters):**

◆ *Have you ever talked to any of the responsible officials about the complainant's protected communication or the personnel action(s) or threats? If so, what was said?*

◆ *Did any responsible management official say anything that would lead you to believe that there was any bias or animosity toward the complainant for making or preparing a protected communication? Any comments about the complainant going "outside the chain of command?"*

◆ *Do you have any personal knowledge of the events leading to the personnel action (s) or threat(s) ?* (If so, ask them to tell you about it. Also ask whether they heard any rumors regarding the protected communications or the reasons for the personnel actions and the source of the rumors.)

◆ *Do you have any other information or comments you would like to make relevant to the issue of reprisal or that you believe may have bearing on this case?* (If so, obtain as much specific information as possible.)

◆ *Do you believe that the same actions would have occurred if the complainant had not made or prepared a protected communication?*

◆ *Do you have any reason to believe or information that suggests that the responsible management officials reprised against the complainant? If so, what? And why?*

**Remain objective**--the issue of reprisal is not a character issue or popularity contest. Do not be swayed by witness opinions regarding the character of the complainant or the responsible management officials without factual support. Even if you find that the opinions are supported by the facts, you may not rely solely on the reputed character of an individual to draw a conclusion regarding whether reprisal occurred. People of questionable character can be reprised against, and managers of very sterling character can, in a moment of anger, reprise against someone. You may consider past performance or misconduct, but only so far as it has any direct bearing or relevance to the current issues.

As we've said before, **investigate the complaint and not the complainant.** If you find yourself doing this, STOP! The issue is reprisal, not the character of the complainant who alleged reprisal.

## 2.7.  Completing the Investigation

You've completed the investigation when you've answered the four questions:

   1.  *Did the military member make or prepare a communication protected by statute?*

   2.  *Was an unfavorable personnel action taken or threatened or was a favorable personnel action withheld or threatened to be withheld following the protected communication?*

   3.  *Did the official(s) responsible for taking, withholding, or threatening the personnel action know about the protected communication?*

   4.  *Does the evidence establish the personnel action would have been taken, withheld, or threatened if the protected communication had not been made?*

By now, you should have established the answers to the first three questions.  However, you will not be able to answer the fourth question until you complete the review and analysis of the evidence discussed in the next Section.

## 2.8   Review of the Evidence.  Review the evidence, and update the chronology of events you began in section 2.2.  If you have not yet developed a chronology, do so now.  Show the "who, what, when, where, why, and how" for each key event beginning with some background information prior to the protected communication(s), and each personnel action taken, withheld, or threatened.  Include other relevant events that preceded or occurred at the same time of the protected communication(s) in the chronology to assist in the analysis.

Prepare written summaries of all witness testimony.  **Important Reminder--you must include in the summaries of testimony the answers each witness gave to each of the four questions**.  Ensure that any information or fact that you attribute to a witness in the body of the report can be found in the summary of the witness' testimony.

List or otherwise catalogue all the documentary evidence.

**Remember--you cannot assume anything.**  You must establish the facts and draw your conclusions based on the testimony and documentary evidence that support the facts.  All must be clearly and logically presented in the report of investigation.  Now would be a good time to review sections 2.9 and 4.1 for the legal requirements pertaining to the report of investigation and supporting documentation required.  **Your report must include the required documentation!**

## 2.9.  Analysis and Report Writing.  You can most easily accomplish the analysis of the evidence within the framework of the report outline described below.  However, as you begin to analyze the evidence, remember to base your conclusions on the administrative evidentiary standard of a **"preponderance of the evidence."**  In other words, give greater weight to the evidence which you find most credible, most convincing, and that which demonstrates to the reader that it is more probable than not that the facts and circumstances occurred as set forth in the report.  Do not use the criminal evidentiary standard of "beyond a reasonable doubt."

While your report will undergo a formal legal review, do not hesitate to consult with appointed or other designated legal counsel during the course of the investigation.

If you follow the report outline below, you will soon find out whether you have adequately addressed each question:

IGDG 7050.6

*__Introduction__*. State the complaint's allegations. If you did not address all of the allegations or referred them to another agency, cite the reasons and disposition of each.

*__Background__*. Give a brief overview of events that led to the protected communication and personnel actions. Use the chronology as the basis for the background. Include a brief summary of the facts no in dispute.

*__Did the complainant make or prepare a communication protected by statute?__* State the question and lest each protected communication that meets the definition under DoD Directive 7050.6, the date, and to whom the protected communication was made. For example, "Letter to Senator Fixit [or IG, Commander (Article 138), etc.], April 1, 1995, [complainant] reported ] fraud, waste, abuses, unfair treatment, criminal activity, ext.}."

*__Did the management official(s) responsible for taking, withholding, or threatening the personnel action know about the protected communication?__* State the question and lest each responsible management official for each personnel action. State when each official first became aware, believed, suspected, heard rumors, or actually knew of the protected communication(s). If knowledge by any responsible management official is undisputed, briefly cite the evidence supporting that fact. i.e., witness testimony. If knowledge by any responsible management official is disputed, briefly state the arguments for and against knowledge of the protected communication, and state your conclusion based on a **preponderance of evidence, i.e., that it was more likely than not** that the responsible management official knew or did not know about the protected communication.

If you believe the evidence is inconclusive and that further investigation would not be productive, state that conclusion. Also explain why any responsible management official was interviewed. Proceed to the next question.

*__Does the evidence establish the personnel action would have been taken, withheld, or threatened if the protected communication had not been made?__* Address each personnel action or threat separately. Review the five variables discussed in Section 2.6 (see page 2-9) of this guide. Address each of the five variables applicable to the personal action. Analyze the evidence and resolve any conflicting evidence. State your conclusions based on the preponderance of the evidence.

Remember, just because an action was within management's prerogative does not establish that reprisal did not occur. Even if you find that the responsible management officials offered credible justification for the personal action based on the complainant's performance or conduct, you may not rule out reprisal until you have established that management would have taken the exact same course of action even if the complainant had not made or prepared a protected communication.

The burden is on you to ensure that you have the necessary evidence to objectively decide this question. If you realize that you are missing any evidence or discover that you did not ask the right question to resolve an issue--**STOP**--go back and obtain what you need before completing you analysis and drawing your final conclusions.

*__Conclusions__*. Briefly state whether the allegation of reprisal is substantiated or unsubstantiated for each personnel action. Also state whether, each personnel action was otherwise proper and procedurally correct.

*__Recommendations__*. If you substantiate reprisal or any other impropriety, recommend corrective action. The recommendation for corrective action may be general or specific, and may address disciplinary options. Corrective action should be sufficient to make the complainant "whole" and restorer the complainant to the same or equal status he or she would have attained if the reprisal had not occurred.

Include int he appendices summaries of testimony and relevant documents.

15

**2.10.** **Summary**.  Writing the outline for the report is the easy part--"filling in the blanks" through proper analysis of the evidence is the hard part.  However, if you followed the guidance, developed the chronology, asked the right questions, obtained the appropriate documents, you're well on your way.  If you conducted a thorough, objective investigation-the answers will come.

After you write the report, run the checklist at Figure 2.1 to ensure that you have adequately addressed the issues.  Remember, the IG DoD will use this same checklist to evaluate the reports of investigation submitted by IG's of the DoD Components.  If you can complete the checklist, your report should be adequate to meet the standards required.  If not, then go back and obtain what you need to satisfy the investigation review criteria.

**2.11.** **Definitions**.  The definitions pertaining to military whistleblower reprisal investigations are located at Enclosure 2 to DoD Directive 7050.6 (Appendix A).

IGDG 7050.6

Figure 2-1

## MILITARY WHISTLEBLOWER REPRISAL INVESTIGATION
## REVIEW CRITERIA WORKSHEET

(Note: An * indicates those elements considered "CRITICAL" by the IG DoD)

* 1.    Complainant name/address:

*2.    Case Number:

Date complaint received:
Date complaint referred to Service:
Date report received from Service:

*3.    Investigator's Name, Rank, Organization, Duty Phone:

*4.    Allegations:

*5.    Identify the Protected Communication(s) *(Include dates and to whom communication made)*

*6.    What action was taken concerning the Protected Communication(s) and was the action sufficient?-- *(e.g., Was an investigation conducted, by whom, results?)*

*7.    Identify (1) the Personnel Actions (taken, withheld, or threatened) and (2) the Responsible Management Official for each Personnel Action.

*8.    Case Quality Control Review

　　*A.   Did the investigator:

　　　　*Interview the Complainant?

　　　　*Identify all the personnel actions?

　　　　*Interview the responsible officials (For *each personnel action)?*

　　　　*Establish the date responsible officials became aware of the protected communication? *(Include the dates and how the official knew about the protected communication.)*

　　　　*Interview relevant witnesses identified by the Complainant?

　　　　*Interview other key witnesses?

　　*B.   Are all pertinent documents/records provided as enclosures to the report?

IGDG 7050.6

Figure 2-1 (Continued)

*C.    *Are summaries of testimony provided as enclosures to the report?  *(Note: There should be a summary of testimony for each individual interviewed.)*

9.    Does the evidence establish that the personnel action(s) would have been taken, withheld, or threatened if the protected communication had not been made? **Provide your analysis.**

10.    Are the summaries of testimony adequate? *(Note: witness testimony cited in the report must be consistent with the content of the summary of testimony.)*

11.    Is the report balanced--does it present both sides of the matters at issue?

12.    Is relevant information submitted by the Complainant addressed?

13.    Are the conclusions and recommendations reasonable based on the facts?

14.    Was the investigator independent of the allegations and free from command influence?

15.    Comment on the overall quality of the report.

Review Conducted By:

IGDG 7050.6

# CHAPTER 3
## INVESTIGATION OF IMPROPER REFERRAL FOR
## MENTAL HEALTH EVALUATION

**3.1.  When to Use this Chapter.**  Follow the procedures outlined in this Chapter when the allegation pertains to procedural errors or omissions, denial of rights, or any other allegation of noncompliance with the provisions of DoD Directive 6490.1.  If the complainant alleged that he or she was referred for a mental health evaluation in reprisal for making or preparing a protected communication, use Chapter 2 to investigate the reprisal allegation.

**3.2.  Investigation Checklist.**  Use the checklist at Figure 3.1 to investigate allegations of noncompliance with the provisions of DoD Directive 6490.1.  Use **Part A,** for allegations pertaining to an non-emergency outpatient and inpatient referrals for mental health evaluation, and **Part B** of the checklist for allegations pertaining to emergency or involuntary inpatient mental health referrals.  The checklist simply asks in question form whether there is documentary evidence that each provision of DoD Directive 6490.1 was satisfied.

**3.3.  Recommendations.**  When you make a finding of noncompliance with any provision of the directive, recommend to the appointing authority that appropriate corrective action be taken to preclude recurrence, to include retroactive compliance with the directive to the extent practical and reasonable. Advise the appointing authority that any assessment that a mental health evaluation was used in a manner in violation of DoD Directive 6490.1 must be reported to the IG DoD according to the implementing DoD component regulations.

When you find that a military member was referred for a mental health evaluation in reprisal for making a protected communication, recommend appropriate corrective action.  Remember that violations of certain provisions of DoD Directive 6490.1 are punishable under the UCMJ and/or regulations governing civilian disciplinary or adverse action, as applicable.

**3.4.  Definitions.**  The definitions pertaining to mental health referral investigations are located at Enclosure 2 to DoD Directive 6490.1 (Appendix B).

Figure 3-1

## MENTAL HEALTH REFERRAL INVESTIGATION CHECKLIST

1.      Complainant name/address:

2.      Case Number:

      Date complaint received:
      Date complaint referred to Service:
      Date report received from Service:

3.      Investigator's Name, Rank, Organization, Duty Phone:

4.      Allegations:

5.      Type of Referral: Non-emergency/Emergency

**PART A: Non-emergency (Outpatient and Inpatient Referrals)**

1.      Did the Commanding Officer:

     a.  Consult with a mental health professional before referring the member for a mental health evaluation?  When?

     b.  Provide the member written notice of the mental health referral?  When?  Is member's acknowledgment of the notice present?

     c.  If written notice was provided, did the notice include:

        (1)  Date and time of the scheduled mental health evaluation?

        (2)  Factual description of the behavior and/or verbal expressions that caused the commanding officer's mental health evaluation referral?

        (3)  Name of the mental health professional with whom the commanding officer consulted before making the mental health evaluation referral?  If not, does the notice explain why?

        (4)  Positions and telephone numbers of authorities, including attorneys and IGs, who could assist the member who wishes to question the mental health evaluation referral?

2.      If the member was referred for a mental health evaluation, was the member provided a copy of a listing of the following rights to: (this applies in non-emergency mental health evaluation referrals)

     a.  Seek advice from an attorney who is a member of the Armed Forces or who is employed by the DoD designated to provide such advice under DoD Directive 6490.1 or an IG or an alternate source if an attorney is not reasonably available?

     b.  Submit an allegation of referral in violation of DoD Directive 6490.1 to any IG?

     c.  Be evaluated by a mental health professional of his or her choosing and at his or her expense if reasonably available and within a reasonable time after the referred mental health evaluation?

IGDG 7050.6

Figure 3-1 (Continued)

    d.  Not be restricted in lawfully communicating with an IG, attorney, Member of Congress, or others about the mental health referral?

    e.  Have at least two business days before the scheduled evaluation to meet with an attorney, IG, chaplain, or other appropriate party?  If not, is there an explanation?  (This only applies in non-emergency mental health evaluation referrals.)

3.    If the member was aboard a naval vessel or in duty circumstances that made compliance with DoD Directive 6490.1 impractical, did the commanding officer prepare a memorandum stating the reasons for the inability to comply with the Directive?  If so, when?

4.    Did the mental health professional who conducted the mental health evaluation:

    a.  Assess the circumstances surrounding the request for mental health evaluation to ensure that the evaluation does not appear to have been in reprisal for whistle blowing?

    b.  Report to the superior of the referring commander, via the mental health professional's command channels, evidence indicating that the evaluation may have been inappropriate?

    c.  Advise the member of the purpose, nature, and likely consequences of the evaluation?

    d.  Make clear to the member that the evaluation is not confidential?

5.    If the mental health professional performed both evaluative and therapeutic roles, did the mental health professional explain to the member the possible conflict of interest issues at the outset of the therapeutic relationship?

 

 

_____
REVIEWING OFFICIAL

IGDG 7050.6

Figure 3-1 (Continued)

**PART B:  Emergency or Involuntary Inpatient Mental Health Evaluations.**  Emergency or involuntary inpatient mental health evaluations must be conducted in accordance with the "least restrictive alternative principle."  See DoD Directive 490.1 for the full definition.

1.     Did a psychiatrist, another mental health professional, or a physician admit the member for inpatient mental health evaluation?

2.     Did the admitting psychiatrist/physician determine that the mental health evaluation could not be appropriately or reasonably conducted on an outpatient basis?

3.     After a member is admitted for an emergency or involuntary mental health evaluation, were reasonable efforts made as soon as practical to inform the member of:

       a.   The reasons for the evaluation?

       b.   The nature and consequences of the evaluation?

       c.   Any treatment recommended or required?

4.     Was the member informed of the right, as soon after admission as the member's condition permitted, to contact a friend, relative, attorney, or IG?

5.     Was the member evaluated by the attending doctor within two business days after admission to determine if continued hospitalization and treatment was justified or if the member should be released?

6.     Did the attending doctor make a determination of whether the condition manifested itself from a traumatic event or was it caused by a behavioral, psychological, or biological dysfunction in the person?

7.     If a determination was made that continued hospitalization or treatment was required, was the member notified orally and in writing of the reasons for this determination?

8.     Within 72 hours of admission, was a review of the appropriateness of continued hospitalization conducted?

9.     Was the review in 8 above conducted by:

       a.   An officer NOT in the member's immediate chain of command?

       b.   An officer who is neutral and disinterested?

       c.   An officer in the grade of 0-5 or above appointed by appropriate commander?

10.    Did the reviewing officer:

       a.   Introduce him/herself to the member?

       b.   Indicate the reasons for the interview?

       c.   Notify the member of the right to have legal representation during the review by a judge advocate or an attorney of his or her choosing and expense who is available within a reasonable time?

IGDG 7050.6

Figure 3-1 (Continued)

    d.  Determine whether continued evaluation, treatment, or discharge was appropriate?

    e.  Review the mental health evaluation conducted by the attending doctor of the need for continued hospitalization and treatment?

    f.  Make a determination of whether the referral for mental health evaluation was used in an inappropriate, retributive or punitive manner and, if so, report such a finding to appropriate authorities for further investigation?

REVIEWING OFFICIAL

IGDG 7050.6

# CHAPTER 4
# REPORTING REQUIREMENTS

**4.1.    Military Reprisal Cases.** Under 10 U.S.C. 1034 and DoD Directive 7050.6, the following are **statutory, i.e., mandatory,** requirements that must be met in reprisal investigations:

a.    The investigating official must be outside the immediate chain of command of both the military member and the responsible management officials against whom the allegations were made.

b.    The IG DoD must provide the complainant a copy of the report of investigation on their allegations of reprisal. If an investigation of the initial protected communication or disclosure of wrongdoing is conducted under 10 U.S.C. 1034, then the complainant must also be provided a copy of the report of investigation. The copy provided to the military member will contain the **maximum disclosure** of information permitted under the provisions of the Freedom of Information Act.

c.    The investigation of the reprisal allegation shall be completed and the report of investigation issued within 90 days of the receipt of the allegation.

d.    If the report cannot be issued within 90 days of receipt, the IG DoD must notify the Under Secretary of Defense (Personnel and Readiness) and the military member. The notification must include the reasons the report will not be submitted within the prescribed time and when the report will be submitted. It is important to keep IG DoD apprised of the status.

e.    The IG DoD must notify the Under Secretary of Defense (Personnel and Readiness) and send a copy of the report to the military member not later than 30 days after completion of the investigation. The copy provided to the military member will contain the maximum disclosure of information permitted under the provisions of the Freedom of Information Act.

f.    The report of investigation must include:

(1)    A thorough review of the facts and circumstances relevant to the allegation(s);

(2)    The relevant documents acquired during the investigation; and

(3)    Summaries of interviews conducted.

**IMPORTANT**: The report must contain **all** of this material. If any material is lacking, the reporting requirements, as defined by law, have not been satisfied. Two copies of the report of investigation must be submitted to the IG DoD--one un-redacted and one redacted for the military member. The redacted copy of the report for the military member must contain the **maximum disclosure** of information permitted under the provisions of the Freedom of Information Act. Follow your DoD Component guidelines for forwarding the report of investigation.

**4.2.    Mental Health Referral Cases**

a.    Allegations of Noncompliance. Reports of investigations of allegations that the mental health referral did not comply with the provisions of DoD Directive 6490.1, should include the responses to the questions contained in Figure 3.1, a summary of the facts surrounding the issues addressed, and an analysis of the pertinent evidence collected.

b.    Allegations of Reprisal and Noncompliance Case. When the complainant has alleged both reprisal and noncompliance, the requirements in section 4.1 and 4.2 apply. Also include the responses to the checklists at Figures 2.1 and 3.1.