UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NANCY E. WEINGARTNER,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL WYNNE,<br><br>Defendant. | Civil Action 05-01031 (HHK) |

MEMORANDUM OPINION

Plaintiff Nancy Weingartner ("Weingartner"), a Major in the United States Air Force Biomedical Services Corps, brings this action against Michael Wynne, Secretary of the Air Force ("the Secretary"),[1] alleging claims pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq*. ("APA"). Weingartner seeks judicial review of the decision of the Air Force Board for Correction of Military Records' ("the Board") denying her requests for revision of her performance records, and for direct promotion. Before the court are the Secretary's motion to dismiss or, in the alternative, for summary judgment [#7] and Weingartner's cross-motion for summary judgment [#13]. Upon consideration of these motions, the oppositions thereto, and the record of this case, the court concludes that the Secretary's motion must be granted and Weingartner's coss-motion must be denied.

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Michael Wynne, Secretary of the Air Force, is substituted as the defendant in this action in place of his predecessor in office, Pete Geren.

I. BACKGROUND

At the time the complaint was filed in 2005, Weingartner was serving on active duty in the United States Air Force ("Air Force") at the grade of major. In 1998 and 1999, she was a licensed clinical social worker and served as Family Advocacy Element Counsel, 86th Medical Group, at the Ramstein Air Base in Germany. In April 1999, the Air Force prematurely removed Weingartner from her position and reassigned her as a Special Assistant to the 86th Support Group Commander at Kaiserslautern Military Community in Germany. Weingartner filed a complaint regarding the reassignment, initially with the Third Air Force Inspector General's office ("IG") at Ramstein Air Base on May 5, 1999, and a second complaint on September 25, 2000. The IG investigated Weingartner's complaints and found them to be unsubstantiated, with the exception of one claim of delayed and improper feedback, and determined that no further action needed to be taken. In 2001, Weingartner returned to the United States and began service at Moody Air Force Base in Georgia. During the time period of 1999–2002, the Lieutenant Colonel Selection Board considered Weingartner for promotion to the grade of lieutenant colonel, but ultimately did not select her for promotion during any of these years.

After not being selected for promotion, Weingartner filed an application with the Corrections Board on June 11, 2003, requesting changes to her performance records and for a promotion. On September 14, 2004, the Board denied Weingartner's application, indicating she had failed to present evidence demonstrating "the existence of probable material error or injustice" in her record. Administrative Record ("A.R.") at 18. The Board acknowledged in its report that there was a title error in Weingartner's performance records, which indicated that she served as "Sembach Community Services Coordinator," rather than as "Family Advocacy

Element Counsel." A.R. at 16. However, the Board characterized the inaccurate title as a "harmless error" and denied further relief. A.R. at 18. Furthermore, the Air Force "acknowledge[d] that there was an error on the applicant's [performance record, but that it was] highly unlikely this error was the sole cause for her nonselection." *Id*. The Board saw no reason to correct the Air Force's records regarding Weingartner's non-selection for promotion. A.R. at 16.

## II. ANALYSIS

Weingartner asserts that the Board's ruling was arbitrary, capricious, and "not based on substantial evidence based on the whole record." Weingartner seeks a remand to the Board for further review and explanation of its ruling.[2]

**A.     Review of APA Claims**

Final agency action is subject to judicial review under the APA. The Board is an "agency," s*ee* 5 U.S.C. § 701(b)(1) (defining "agency" to include "each authority of the Government"), and its decision is considered a final agency action for the purposes of this suit. *See* 5 U.S.C. § 704.[3] Thus, the court must defer to the Board's decision unless it is "arbitrary and

---

[2] Summary judgment is appropriate to resolve disputes over final administrative actions. However, the court does not employ the standard under Fed. R. Civ. P. 56 but instead applies the standard of review under the relevant statute and the Administrative Procedure Act. *Gonzales v. U.S. Dep't of State*, 135 F. Supp. 2d 193, 195 (D.D.C. 2001).

[3] The APA excludes from judicial review agency decisions pursuant to "military authority exercised in the field in time of war or in occupied territory," 5 U.S.C. § 701(b)(1)(G), and "courts martial and military commissions," *id.* § 701(b)(1)(F). *See Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1401 n.6 (D.C. Cir. 1995). Federal courts may conduct limited review, however, of challenges to decisions of military records-correction boards. *See Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989) ("*Kreis I*").

capricious, contrary to law, or unsupported by substantial evidence." *See Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997); *Dickson*, 68 F.3d at 1404 (D.C. Cir. 1995).

The Board's authorizing statute provides the agency with considerable discretion in determining whether to take corrective action with respect to an applicant's record. The Secretary, acting through the Board, "may correct any military record of that department *when he considers it necessary* to correct an error or remove an injustice," 10 U.S.C. § 1552(a) (emphasis added), not simply when such action is necessary to correct an error or remove an injustice. *Kreis I*, 866 F.2d at 1513 (noting that this scheme "exudes deference" to the Secretary and "substantially restrict[s] the authority of the reviewing court to upset the Secretary's determination"). Judicial review of the Board's decision requires the court "to determine only whether the Secretary's decision making process was deficient, not whether his decision was correct." *Id*. at 1511.[4]

Thus, as with traditional review of administrative agency actions, the court will not disturb the decision so long as the deciding body "examine[d] the relevant data and articulate[d] a satsifactory explanation for its action, including a 'rational connection between the facts found and the choice made.'" *Kreis v. Sec'y of the Air Force*, 406 F.3d 684, 686 (D.C. Cir. 2005) ("*Kreis III*") (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983)). Agency findings of fact are reviewed for "substantial evidence." *JSG Trading Corp. v. Dep't of Agric.*, 235 F.3d 608, 611 (D.C. Cir. 2001) (substantial evidence is "such relevant

---

[4] A court may set aside the Secretary's determination only if the court finds the determination to be (i) arbitrary or capricious; (ii) not based on substantial evidence; (iii) a result of material error or fact or material administrative error; or (iv) otherwise contrary to law. 10 U.S.C. § 628(g)(1)(A).

evidence as a reasonable mind might accept as adequate to support a conclusion when taking into account whatever in the record fairly detracts from its weight" (internal quotation marks omitted)); *FPL Energy Maine Hydro LLC v. F.E.R.C.*, 287 F.3d 1151, 1160 (D.C. Cir. 2002) ("The 'substantial evidence' standard requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence.").

Finally, though judicial review of military records-correction decisions incorporates the core "arbitrary or capricious" standard of traditional administrative law, such review involves an "unusually deferential application" of that standard. *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000) (quoting *Kreis I*, 866 F.2d at 1514). "This deferential standard is calculated to ensure that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence." *Id.* (citing *Orloff v. Willoughby*, 345 U.S. 83, 94 (1953) ("Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters."))[5]

**B.    Application**

    **1.    The Board's Articulation of Its Decision**

Weingartner first argues that the Board failed to properly explain why it declined to alter her records regarding her removal as Family Advocacy Element Counsel, and that this failure to

---

[5] This additional deference does not apply in a case where a plaintiff challenges a records-correction board's "application of a procedural regulation governing its case adjudication process." *Kreis III*, 406 F.3d at 686 (holding that the Board's decision not to reconsider plaintiff's motion in light of new evidence was improper because it violated Board procedures).

explain requires the court to set aside the Board's decision. *See* Pl.'s Mot. for Summ. J. at 13. The court is not persuaded.

Relying on *Muse v. United States*, 21 Cl. Ct. 592, 611 (Cl. Ct. 1990), Weingartner asserts that courts should give less deference to a Board's decision that merely catalogues a party's contentions as justification for its decision. *See* Pl.'s Reply at 2; *Muse*, 21 Cl. Ct. at 611 (stating that where an opinion was "more a catalogue of the contentions considered by the Board[,] than an explanation of how the material and arguments presented were weighed and appraised," courts are "entitled to give less deference to the Board's conclusions than we would do if a reasoned explication had been forthcoming") (quoting *Hary v. United States*, 618 F.2d 704, n.6 (Ct. Cl. 1980) (internal marks omitted).

While the court agrees that agency decisions lacking articulated explanations warrant more searching scrutiny, there is no need to abstain from giving deference to the Board's conclusions here. The Board's decision did not merely catalogue Weingartner's allegations. Rather, it addressed them by explicitly adopting the findings of the Air Force's Offices of Primary Responsibility ("OPR") report as the rationale for its own determination. *See* A.R. at 18. This adoption suggests that the Board assessed Weingartner's allegations, and after reviewing the IG report, agreed with the conclusions reached therein. Based on the record of the case, and applying the appropriate level of deference, the court finds the Board's decision sufficiently addressed Weingartner's allegations and finds no reason to remand for further articulation.

### 2. Assignment of the Burden of Proof

#### A. Duty Title Error

Weingartner next contends that the Board misapplied the burden-shifting framework that governs the Board's review of petitions by officers regarding their performance records. Ordinarily, the Board is entitled to presume that statements in an officer's performance records are fair and accurate unless an applicant presents specific evidence to rebut that presumption. *Frizelle*, 111 F.3d at 178. An officer claiming that errors in her record cost her a promotion bears the burden of proving that her record was "prejudiced by the errors, in the sense that the record appears worse than it would in the absence of the errors." *Id*. She also bears the burden of making a *prima facie* showing that she was eligible for promotion. *Id*. Then the burden shifts to the Air Force, which has the ultimate burden of persuasion that it was unlikely that she would have been promoted in any event, regardless of the error in her record. *Id*.

Contrary to Weingartner's assertions, the Board did not misapply the burden in her case. Weingartner's records indicated that she served as "Sembach Community Services Coordinator," when in fact, she served as "Family Advocacy Element Counsel." A.R. at 16. Although the Air Force acknowledged that this was, on its face, an error, it did not concede — as Weingartner contends — that the error was prejudicial. It was Weingartner's initial burden to prove that the distinction between these titles was such that it would make her record appear "worse than it would in the absence of the errors," *Frizelle*, 111 F.3d at 178, and in reviewing her submissions on this point, the Board determined that she did not meet this burden. After conducting its own review of the record, the court sees no reason to disturb that conclusion.

### B. Reprisal Claims

In addition, Weingartner contends that the Board misapplied the applicable burden-shifting framework to her claim that her removal as Family Advocacy Element Counsel was an illegitimate retaliatory action. After Weingartner first raised this claim through internal channels, IG investigators assessed the allegations and determined that Weingartner made a *prima facie* case for reprisal, since her internal complaint was a protected communication and her removal was an unfavorable personnel action. *See* Pl.'s Reply at 4; A.R. at 227. The IG investigators then shifted the burden of proof to the Air Force to show that Weingartner would have been removed in any event, A.R. at 228, and determined that the Air Force met this burden by providing sufficient evidence that Weingartner would have been removed as Family Advocacy Element Counsel even if the protected disclosure had not been made, A.R. at 223, 228, 236–37.

When Weingartner thereafter submitted her application to the Board, her burden was to provide the Board with sufficient evidence of probable material error or injustice regarding her record. *See* Def.'s Reply Ex. 1 (AFI 36-2603, Personnel, Air Force Board for Correction of Military Records, Mar. 1, 1996) (stating applicant has the burden of proof to provide sufficient evidence of probable material error or injustice). The Board, incorporating the underlying IG determination into its analysis, determined that Weingartner did not provide the requisite evidence and thus, did not meet her burden at either the IG stage or before the Board. *See* A.R. at 18. As the IG's initial burden-shifting determination was proper, the court finds no error in the Board's adoption of that determination.

3.   **Chain-of-Command Support**

Finally, Weingartner contends the Board acted improperly by requiring her to supply evidence from her superiors in her chain-of-command to support her reprisal claim. She argues there is no "hard-and-fast rule" requiring chain-of-command support and that in a reprisal case it is "improbable" to obtain such evidence (since superior officers who are alleged to have retaliated are not likely to have given their support to the victim of their retaliatory acts). *Id*. Therefore, Weingartner claims, the Board was wrong to refuse to change her performance record because she lacked this evidence. *Id.* The court agrees that there is no "hard-and-fast rule" requiring chain-of-command support, but does not agree that any such rule was imposed on Weingartner.[6]

The Board found that Weingartner failed to "present any credible evidence from her senior rating chain or other agencies to support her contention of error or injustice." A.R. at 18. While the Board also noted that Weingartner failed to supply any support from her "rating chain or MLR" (Management Level Review), *id*., the Board did not say that it would not have considered additional evidence from any other source to support her reprisal claim, if such evidence had been presented. While one could interpret the "rating chain or MLR" statement in

---

[6] The court also does not agree that either the Board or the Secretary has asserted that the Applicants' Guide to the Air Force Board for Correction of Military Records ("Guide") requires that chain-of-support evidence is required in reprisal cases. The Guide states that "[t]he [Board] will correct your military records only if you can prove that you are the victim of error or injustice. You do this by providing evidence, such as signed statements from you and other witnesses or copies of records that support your case." Def.'s Reply Ex. 2 (AFP 36-2607, Personnel, Applicants' Guide to the Air Force Board for Correction of Military Records ¶ 4.1, Nov. 3, 1994). Chain-of-command evidence is just one example of such evidence, and the court does not find that either the Board or the Secretary ever asserted anything to the contrary. *See* Def.'s Reply at 6.

isolation to imply that evidence needed to come from one particular source, it is apparent that what informed the Board's decision was a *general* lack of evidence from any source, and not just a lack of evidence from Weingartner's chain of command. The court has thoroughly searched the record and determines that the Board's conclusion that Weingartner did not put forward sufficient evidence to raise a claim of reprisal was not arbitrary or capricious.

### III.  CONCLUSION

For the foregoing reasons, the court determines that the Secretary's motion for summary judgment must be granted, and Weingartner's cross-motion for summary judgment must be denied. An appropriate order accompanies this memorandum opinion.

                                                       Henry H. Kennedy, Jr.
                                                       United States District Judge

Dated: March 28, 2007